IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HUGH KELLY and CHRISTINE KELLY,** individually and on behalf of all similarly situated<br><br>**v.**<br><br>**SANTANDER CONSUMER USA INC.** | **CIVIL ACTION**<br><br>**NO. 20-3698** |

**MEMORANDUM RE: PLAINTIFFS' MOTION TO REMAND**

**Baylson, J.** **February 10, 2021**

## I. INTRODUCTION

Plaintiffs, Hugh and Christine Kelly ("the Kellys"), bring this action against Santander Consumer USA ("Santander"). Before this Court is Plaintiffs' Motion to Remand. Defendant filed a Response and Plaintiffs Replied. For the reasons that follow, the Court will deny Plaintiffs' Motion to Remand.

## II. PROCEDURAL HISTORY

In May 2020, Plaintiffs filed a class action complaint in the Philadelphia Court of Common Pleas. (Def.'s Opp'n to Pls.' Mot. to Remand 3, ECF 12). That complaint alleged that Defendant, Santander, violated the Uniform Commercial Code (UCC) and the Pennsylvania Motor Vehicle Sales Finance Act (MVSFA) by failing to comply with requirements for repossession notices. (Id.)

Defendant removed that case to our district under the Class Action Fairness Act (CAFA).[1] (Id.) Plaintiffs filed a notice of voluntary dismissal, and one day later, filed another class action

[1] "CAFA provides the federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." Std. Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (internal quotation marks omitted).

complaint in the Court of Common Pleas, again alleging violations of the UCC and the MVSFA.[2] (Id. at 3–4). Defendant again removed the case to this district, and Plaintiffs now move to remand the case to state court. (Id. at 3, 5).

## III. FACTUAL BACKGROUND

Plaintiffs Hugh and Christine Kelly are Pennsylvania residents who filed a class action complaint against Defendant Santander. Santander is a nationwide bank that purchases retail installment sales contracts through vehicle dealerships. (Compl. 3, ¶ 6, ECF 1-7). In June 2017, Santander caused Plaintiffs' car to be repossessed for the failure to make loan payments. (Id. at 7, ¶ 29). The Kellys filed their complaint on behalf of themselves and similarly situated people who have had their vehicles repossessed by Santander in Pennsylvania. (Id. at 2, ¶ 1).

Plaintiffs' Complaint contains three main claims, each of which centers around Santander's alleged failure to follow statutory requirements under the UCC/MVSFA. (Id. at 8–9, ¶¶ 34–39). Pennsylvania courts apply the notice provisions of both statutes in cases of repossession. See Indus. Valley Bank & Tr. Co. v. Nash, 502 A.2d 1254, 1263 (Pa. 1985).

The MVSFA "is a regulatory statute the provisions of which are tailed to protect purchasers of motor vehicles from predatory credit and collection practices." Homziak v. Gen. Elec. Cap. Warranty Corp., 839 A.2d 1076, 1081 (Pa. Super. Ct. 2003). Its purpose is "to address usurious fees and improper conduct that occurred in the financing of an automobile." Id. at 1082; see also Gibbs v. Titelman, 502 F.2d 1107, 1111–12 (3d Cir. 1974) ("[T]he MVSFA was enacted in 1947, among other reasons, to curb the abuses associated with private repossessions. The statute displays a noticeable concern for protecting a broad range of consumer interests, including, but not limited

[2] The MVSFA was originally found in Chapter 7 of Title 69 of Purdon's Statutes. In 2014, it was repealed and recodified in Chapter 62 of Title 12 of the Pennsylvania Consolidated Statutes.


to, private repossessions.") (footnotes omitted); Coy v. Ford Motor Co., 618 A.2d 1024 (Pa. Super. Ct. 1993) (discussing notice requirements for repossession under the MVSFA).

Plaintiffs first claim that the Notices of Repossession issued by Defendant listed an un-incurred storage expense as part of the total amount required to redeem the vehicles in question. (Pls.' Mot. to Remand 2, ¶ 3, ECF 8). Plaintiffs note that the Post-Sale Notices they received after Santander sold their repossessed vehicle listed these fees as "$0.00," evidencing that Santander either listed an inaccurate amount or never incurred the storage expense. (Compl. 12, ¶ 56).

Second, Plaintiffs claim that the Notices of Repossession failed to disclose a Redemption Fee that a borrower must pay in order to redeem the vehicle. (Id. at 13, ¶ 59)

And finally, Plaintiffs assert that the Notices of Repossession failed to disclose a Personal Property Fee also required to redeem the vehicle and/or recover any belongings left inside. (See id. ("Santander permitted the assessment of Redemption Fees and/or . . . Personal Property Fees on Representative Plaintiffs and (putative) class members – in order for them to redeem their vehicle and/or get their personal belongings back from their repossessed vehicle if they so desired – although neither were expenses that were incurred by Santander."))

In the "Class Allegations" section of the Complaint, Plaintiffs note that "due to the Defendant's affirmative concealment and/or self-concealing nature of this wrongdoing(s) in the Notices of Repossession, the Class Period extends back to the date when the Defendant first instituted the deceptive business practice(s)." (Id. at 13, ¶ 69).

Plaintiffs exclusively brought these claims under state law. (Id. at 18–19, ¶¶ 87–97). They request minimum statutory damages only,[3] and their Complaint notes they do not make allegations

[3] Comment 4 to 13 Pa. Con. Stat. § 9625(c)(2) provides that the recovery of minimum statutory damages is "designed to ensure that every noncompliance with the requirements . . . in a consumer-goods transaction results in liability, regardless of any injury that may have resulted."

of actual or concrete injury and they "deliberately fail[ed] to plead facts sufficient to meet the requirements" of Article III standing. (Id. at ¶15).

## IV. PARTIES' ARGUMENTS

### a. Plaintiffs' Motion to Remand

Plaintiffs' primary argument is that they have no standing in federal court. (Pl.'s Mot. to Remand 2–18). Accordingly, they argue that this Court must remand the case to the Court of Common Pleas for lack of subject matter jurisdiction. (Id. at 4).

Specifically, Plaintiffs explain that they crafted their Complaint in order to avoid alleging a particularized or concrete injury-in-fact. (Id. at 2). They emphasize that the Complaint includes no allegations that Plaintiffs would have acted differently had Defendant complied with the UCC and the MVSFA, and that they seek only minimum statutory damages for procedural violations of Pennsylvania state law. (Id. at 2–4, 10).

Plaintiffs also note that Defendants list the amount in controversy at $5M in order to establish federal jurisdiction under CAFA. (Id. at 21). Plaintiffs dispute that figure. (Id. at 21–23). They argue that Santander sampled 1,000 accounts—which may have included some subject to mandatory arbitration—but did not focus on data from the putative class. (Id.)

### b. Defendant's Response in Opposition

Defendant argues that Plaintiffs' Complaint makes an improper attempt to avoid federal jurisdiction by disclaiming potential remedies and injury on behalf of absent putative class members. (Opp'n at 2). Defendant notes that Plaintiffs filed a prior complaint in the Court of Common Pleas, which Defendant removed to federal court. (Id. at 3). Defendant assigns malignant intent to the fact that Plaintiffs voluntarily dismissed the federal suit and filed almost

the same complaint in the Court of Common Pleas, but tried to remove allegations that would support federal jurisdiction. (Id. at 3–4, 12–13). Santander argues that this "jurisdictional gamesmanship" is exactly what CAFA was designed to prevent. (Id. at 7–9).

Defendant contends that Plaintiffs' deliberate failure to plead a concrete injury does not negate the factual allegations in Complaint that support an injury-in-fact. (Id. at 13). Specifically, Defendants claim that the damages Plaintiffs seek—minimum statutory damages—are actual and concrete, and directly linked to the alleged injury, although Defendant never identifies what that perceived injury is. (Id. at 14–15). Defendant argues that Plaintiffs have not pled an attenuated risk of future harm or bare violation of statute divorced from actual injury, and that the millions of dollars Plaintiffs seek is "actual and concrete" redress. (Id. at 15). Defendants further argue that Plaintiffs' disclaiming of concrete injury creates a conflict between their interests and those of the putative class because Plaintiffs cannot legally bind members of the class before it is certified. (Id. at 9–10).

Finally, Defendant argues that Plaintiffs' pleadings confirm the amount in controversy is met, and highlights Santander's declaration,[4] made under penalty of perjury, verifying jurisdictional requirements and the amount in controversy. (Id. at 18–20).

**c. Plaintiffs' Reply in Support**

Plaintiffs argue that Defendant's reliance on the legislative history of CAFA is irrelevant. (Pl.'s Reply 1, ECF 15). They elaborate that they have not engaged in the "jurisdictional gamesmanship" CAFA protects against, as Defendants contend. (Id.) They emphasize that they had the right to voluntarily dismiss their prior Complaint and refile anew in the Court of Common

[4] Randy Bockenstedt, Santander's Senior Director of Collections, gave sworn testimony about the initial investigation of the putative class. (ECF 1-8).

Pleas. (Id. at 3). They press that the instant case is not a nationwide or multi-state class action; the claims are controlled by Pennsylvania state law, involving Pennsylvania residents. (Id.)

Plaintiffs argue that as "masters of their complaint," they have chosen to assert only those claims over which a federal court would not have jurisdiction. (Id. at 3–6). They have purposefully avoided pleading any injury-in-fact, and therefore have no Article III standing. (Id.) Furthermore, the factual allegations of the Complaint do not establish that the Plaintiffs or putative class members have suffered an injury-in-fact; Plaintiffs included no allegations that they suffered concrete damages such as the loss of use of a vehicle or harm to their credit. (Id. at 8).

Plaintiffs emphasize that they have not entered into any *stipulation* that they will cap damages under a certain amount; they are not *legally* limiting the amount of monetary damages available to the putative class. (Id. at 4–5). The damages sought are not based on any alleged injury; they are based on a statutory formula.[5] (Id. at 10–11). At a hearing on February 2, 2021, Plaintiffs conceded that the putative class may have statutory damages exceeding $5 million, therefore establishing CAFA jurisdiction; they emphasized that their standing argument turns on the alleged absence of an injury-in-fact. (Tr. 12:10–13:18, ECF 18). Lastly, Plaintiffs point out the lack of pleading any causal connection between these damages and any injury, also required for Article III standing. (Id. at 11–12).

## V. DISCUSSION

### a. Legal Standards

#### i. Removal and Remand

[5] 13 Pa. Con. Stat. § 9652(c)(2) allows consumer-debtors to recover statutory damages equal to the credit service charge (finance charge) plus 10% of the principal amount of the obligation (amount financed). (See Compl. 14, ¶ 63).

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in a state court if the federal court would have had original jurisdiction over the action. "[D]efendants bear the burden of establishing removal jurisdiction and compliance with all pertinent procedural requirements." Winnick v. Pratt, No. CIV.A. 03-1612, 2003 WL 21204467, *2 (E.D. Pa. May 20, 2003) (Schiller, J.) (citing Boyer v. Snap–On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).

An action must be remanded to state court if at any time before final judgment it appears that the court lacks subject-matter jurisdiction. Bromwell v. Mich. Mut. Ins. Co., 115 F.3d 2018, 213 (3d Cir. 1997). The removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer, 913 F.2d at 111 (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

ii. **Standing**

1. Supreme Court Precedent

An action removed to federal court must meet the Article III requirements for subject-matter jurisdiction, which includes the requirements for "standing." See U.S. Const. art. III, § 2. To show that these requirements are met, the party invoking federal jurisdiction must prove three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (internal citations, quotation marks, brackets, and ellipses omitted); see also Weathers v. Sch. Dist. of Phila., 383 F. Supp. 3d 388, 399

(E.D. Pa. 2019) (Baylson, J.) (applying Lujan's elements of standing to grievances raised against the Philadelphia School District's procurement practices).

When a statutory violation is alleged, a Plaintiff still needs to have suffered an injury in fact for the case to be heard in federal court. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547–48, 1550 (2016). A bare procedural violation, divorced from concrete harm, is insufficient.

Two Supreme Court decisions provide high-level guidance. One is Spokeo, where the plaintiff alleged that a website violated the Fair Credit Reporting Act (FCRA) by publicizing inaccurate information about the plaintiff's creditworthiness over a public search engine. Id. at 1544. In remanding the case to the Ninth Circuit for further analysis, the Court discussed the principles of standing in the statutory violation context. Id. at 1547–50. Rejecting the argument that an injury-in-fact must be tangible in order to be concrete, the Court held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." Id. at 1549.[6] Still, "bare procedural violation[s], divorced from any concrete harm" do not suffice in creating standing. Id.

The Court elaborated on "bare procedural violations" in Summers v. Earth Island Institute, 555 U.S. 488 (2009). There, respondents argued they had federal standing to challenge an action of the United States Forest Service because they had been denied a procedural injury: the ability to file comments on some Forest Service actions as provided by statute. Id. at 496. The Court

[6] Specifically, intangible harms with a "close relationship" to traditional bases for lawsuits in English or American courts, or intangible harms "elevat[ed]" by Congress, which has the power to "define injuries and articulate chains of causation." Id. at 1549 (internal quotation marks omitted); see also Susinno v. Work Out World Inc., 862 F.3d 346 (3d Cir. 2017) (single prerecorded telephone call was violation of TCPA and legally cognizable, intangible injury, because Congress elevated common law intrusion upon seclusion claim).

rejected their argument, holding that the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." Id.

2. Third Circuit Precedent

The Third Circuit has applied the Supreme Court's guidance on several occasions. A leading case on statutory violations and standing reiterates that "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." In re Google Inc. Cookie Placement Consumer Priv. Litig., 806 F.3d 125, 134 (3d Cir. 2015) (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982)) (holding that plaintiffs had standing to sue internet advertisers for violations of the Wiretap Act, Stored Communications Act, and Computer Fraud and Abuse Act).

Writing about the line that divides procedural violations that confer standing from those that do not, the Third Circuit wrote: "We—like several of our sister circuits—understand Spokeo to instruct that an alleged procedural violation manifests concrete injury if the violation actually harms or presents a material risk of harm to the underlying concrete interest." Kamal v. J. Crew Grp., Inc., 918 F.3d 102, 112 (3d Cir. 2019) (internal quotation marks, brackets, and ellipses omitted) (citing Strubel v. Comenity Bank, 842 F.3d 181, 190 (2d Cir. 2016)). In other circumstances, "the mere technical violation of a procedural requirement of a statute cannot, in and of itself, constitute an injury in fact." In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 638 (3d Cir. 2017); see also Long v. Se. Pa. Transp. Auth., 903 F.3d 312 (SEPTA's failure to send copies of background checks to employees sufficiently concrete injury under FCRA, but failure to notify them of their FCRA rights was "bare procedural violation"); Thorne v. Pep Boys Manny Moe & Jack Inc., 980 F.3d 879 (3d Cir. 2020) (lack of tire registration—a

violation of the National Traffic and Motor Vehicle Safety Act—not a concrete injury under Article III).

The Kamal discussion applied these principles to determine that there was no concrete injury where Defendant printed the first six digits of the plaintiff's credit card number on a receipt, a violation of FACTA. See 918 F.3d at 117. The plaintiff attempted to plead two concrete injuries: the printing of the prohibited digits themselves and the increased risk of identity theft from the printing of extra digits. Id. at 113. Turning to Spokeo's framework for intangible injuries, the Court did not deem Kamal's alleged injuries amounted to a concrete harm. Id. Specifically, the Court explained that the "congressional findings underlying [FACTA] are directed to risk incurred by printing the expiration date when the card number is properly truncated . . . . Congress's action to limit FACTA liability to those claims implicating actual harms accords with our understanding of Article III." Id.

The Court next determined that Kamal's allegations did "not have the requisite 'close relationship'" with traditional privacy torts, because "he d[id] not allege disclosure of his information to a third party." Id. at 114.

Finally, the Court analyzed whether "the violation alleged by Kamal entails a degree of risk sufficient to meet the concreteness requirement," id. at 115, and whether Kamal "plausibly aver[red] how J. Crew's printing of the six digits presents a material risk of concrete, particularized harm," id. at 116. The Court found that he did not. Quoting the trial court's language, it held that any threat from such a non-compliant receipt called for a "highly 'speculative chain of future events'" to have occurred, and that there was therefore no "material risk of harm." Id. at 116 (imagining plaintiff "loses or throws away the receipt, which is then discovered by a hypothetical third party, who then obtains the six remaining truncated digits along with any additional

information required to use the card, such as the expiration date, security code or zip code," none of which Kamal alleged) (internal brackets omitted).

Kamal held that the defendant's "alleged violation of FACTA is 'a bare procedural violation' that does not create Article III standing." Id. at 117.

On the other hand, when detailed, personal identifiable information is collected, tracked, and/or released in violation of a statute, the Third Circuit has found standing for this kind of non-tangible injury. See, e.g., In re Nickelodeon Consumer Priv. Litig., 827 F.3d 262, 269, 274 (3d Cir. 2016) (holding that the collection and tracking of information such as usernames, genders, birthdays, IP addresses, browser settings, and similar data "is a de facto injury, i.e., the unlawful disclosure of legally protected information"); see also Horizon, 846 F.3d at 641 (improper disclosure of personal data in violation of FCRA is cognizable injury for Article III standing); St. Pierre v. Retrieval-Masters Creditors Bureau, 898 F.3d 351, 357–58 (3d Cir. 2018) (disclosure of debtor account number through envelope window was injury-in-fact, because implicated the traditional concern of invasion of privacy).

CAFA does not alter these principles. The Third Circuit, following the Supreme Court, has held that plaintiffs may limit their claims to avoid federal subject matter jurisdiction. See Morgan v. Gay, 471 F.3d 469, 474 (3d Cir. 2006) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938)). And, "when a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility." Bromwell, 115 F.3d at 214.

**b. Persuasive Case Law**

As far as this Court can tell, Langer is the only case in our circuit that addresses removal in the context of the UCC and MVSFA. See Langer v. Cap. One Auto Fin., No. 16-6130, 2019

WL 296620 (E.D. Pa. Jan. 23, 2019) (Bartle, J.).  There, the plaintiffs filed a putative class action in the Court of Common Pleas against Capital One for violating notice provisions in the Pennsylvania Commercial Code (PCC) and MVSFA in relation to the repossession of their vehicle. Id. at *1.

Plaintiffs in Langer sought as compensation the greater of actual or statutory damages.  Id. Their Complaint alleged that the PA Department of Transportation would not have transferred title of vehicles to Capital One had the Department been aware of failure to comply with PA law.  Id. Because they believed Capital One acted in a commercially unreasonable manner, plaintiffs also sought to restrain collection or enforcement by Capital One of any deficient loan balances and vacate any deficiency judgments against Plaintiffs.  Id.

Capital One removed the case to federal court and Plaintiffs moved to remand to the Court of Common Pleas.  Id.  The court denied plaintiffs' motion.  Id. at *5.  The court held emphasized that the plaintiffs' allegations described "actual damage in the loss of their vehicle and the existence of monetary loss." Id. at *4.  The complaint also alleged that the Department of Transportation (DOT) would not have transferred title from plaintiffs to Capital One had the DOT been aware of the purported violations.  Id.  Additionally, the plaintiffs sought to restrain and enjoin any collection of loan balances, and requested the greater of actual or statutory damages. The court determined that these allegations yielded a particularized and concrete injury that satisfied the requirements of standing and denied the motion to remand.  Id. at *4–5.

An out-of-circuit case is arguably more similar to this case.  See Lindblom v. Santander Consumer USA Inc., No. 1:15-cv-0990, 2018 WL 500347 (E.D. Cal. Jan. 22, 2018).  The Lindblom Court found that plaintiffs had standing where class members' cars were repossessed. Id. at *5.  Because "Santander collected an allegedly unlawful fee from Plaintiffs that was

purportedly neither permitted by law nor authorized by contract," the court deemed plaintiffs to have "suffered a concrete harm." Id. The court elaborated that "[t]he actual collection of a fee in violation of [the Fair Debt Collection Practices Act] demonstrates concrete harm and is not merely a procedural violation." Id.

Another district court held that the sheer communication of a misleading debt collection attempt "created a sufficient risk of harm to constitute a concrete injury-in-fact," even though the plaintiff "did not incur any expenses or pay a portion of the debt." Kaiser v. Cascade Cap., LLC, No. 3:16-cv-00744-AC, 2018 WL 1521892, *4 (D. Ore. Mar. 28, 2018). Crucial to the analysis was the fact that the FDCPA was meant to protect "individuals from being 'the target of misleading debt collection communications,'" and to prevent "the types of risks that flow from the 'misrepresentation of a consumer's legal rights.'" Id.

Another decision shows the opposite side of the coin. In Littlejohn v. Phoenix Title Loans, the plaintiff alleged that the defendant failed to make required disclosures and listed inaccurate charges on documents relating to her car loan. No. CV-18-04250, 2020 WL 2527017, *2 (D. Ariz. May 15, 2020). Defendant moved to dismiss the complaint for lack of subject matter jurisdiction, arguing that plaintiff did not have standing. Id. The court granted the motion. Id. at *7.

In dismissing the plaintiff's complaint, the court held that

> none of [the] alleged procedural violations . . . support[] an injury in fact finding. [Plaintiff] has not alleged that she would have evaluated the terms of her loan differently, made a different choice had she been presented with additional information, or in any way behaved other than she did had Defendant not committed its alleged violations of the TILA.

Id. at *6 (internal citation, quotation marks, and brackets omitted); see also id. (collecting cases where the failure to meet statutory notice requirements did not confer standing). Ultimately, as

the Littlejohn Court succinctly put it, "[j]ust alleging a deprivation of an accurate disclosure statement is . . . insufficient." Id. at *7.

**c. Analysis**

Applying the legal principles above, the Court will deny Plaintiffs' Motion to Remand the case to the Philadelphia Court of Common Pleas. Plaintiffs have conceded that the total damages for the putative class may exceed $5 million, but rely on their argument that they have not alleged any injury-in-fact to have standing in federal court. (Tr. 12:10–13:18, ECF 18). The Court does not find Plaintiffs' argument persuasive.

Although Plaintiffs have specifically disclaimed any injury-in-fact, and their Complaint explicitly notes it was "crafted . . . to avoid Federal Jurisdiction, deliberately failing to plead facts sufficient to meet the requirements" of Article III, pertinent case law, and Fed. R. Civ. P. 8. (Compl. 3, ECF 1-7), Defendant disagrees. Plaintiffs also contend they do not allege that "they or any of the putative class members suffered any actual, particularized, concrete injury-in-fact or material risk of harm to confer Federal Jurisdiction." (Id. at ¶ 10).

But the Court cannot simply take Plaintiffs at their word just because they prefer to proceed in state court. The Court must "examine the allegations in the complaint from a number of different angles" to see if an injury can be gleaned that satisfies Article III. Thorne, 980 F.3d at 886. Defendants have equal access to federal court if we have jurisdiction.

The Supreme Court has drawn a line between "bare procedural violations" and "injuries in fact." Spokeo, 136 S. Ct. at 1547–48, 1550. And the Third Circuit has interpreted that line to be drawn where the violation presents at least a material risk of harm to the underlying concrete interest, conferring standing. Kamal, 918 F.3d at 112 (internal quotation marks, brackets, and ellipses omitted) (citing Strubel, 842 F.3d at 190). The Court notes that there is no precedential

Third Circuit decision on the interaction between the MVSFA notice requirements and Article III standing, in the removal context or otherwise. The Court will thus chart a path through a thicket of case law.

Here, the allegations in the Complaint go beyond bare procedural violations. The prelude to this entire lawsuit is the allegation that many individuals have had their vehicles repossessed. (Compl. 2, ¶ 5). The Complaint includes allegations that Santander permitted wrongful assessment of fees such that plaintiffs could not redeem their vehicle or get their personal belongings back. (Id. at 13, ¶ 59). The Complaint describes Santander's actions as "violat[ing] its Obligation of Good Faith," "proceed[ing] in a commercially unreasonable manner," "violat[ing] [its] fiduciary duties," pointing to its "affirmative concealment and/or self-concealing nature of this wrongdoing." (Id. at 13–15, ¶¶ 59, 62, 69).

These allegations demonstrate that Plaintiffs faced at least a "material risk of harm" from the deficient Notices sent by Santander. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014) ("In the context of a motion to dismiss, we have held that the injury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury.") (internal brackets and quotation marks omitted). Decisions determining jurisdiction under Rule 12 are relevant to deciding a Motion to Remand.

As the plaintiffs in Lindblom, Plaintiffs allege that they were charged a fee that was "impermissible altogether under the [statute]." 2018 WL 500347, at *5. Although the Kellys have not alleged that they paid these fees, it is nonetheless the "attempt to collect a fee which is prohibited," furnishing an injury-in-fact. Id. Plaintiffs are thus similarly situated to the debtors in Kaiser. Like those debtors, the Kellys received "misleading communications concerning the

enforceability of a debt," which "create[d] a substantial risk that such [material] harms will occur." 2018 WL 1521892, at *4.

Plaintiffs' claims are not merely technical violations removed from any real risk of harm. Unlike the printing of six extra credit card digits in Kamal, there is no need here to follow a "speculative chain of future events" to identify the threat faced when Plaintiffs received inaccurate notices of repossession. See 918 F.3d at 116. Indeed, the very purpose of the MVSFA—the protection of consumers from predatory debt collection—is the foundation of this entire case. See Homziak, 839 A.2d at 1081.

Although, as Plaintiffs point out, this case is different than the other MVSFA removal case in our District, Langer, the difference is not material. The fact that the Kellys' allegations are not as clear-cut as in Langer does not mean that this case must be remanded for lack of standing. See Pub. Int. Legal Found. v. Boockvar, 370 F. Supp. 3d 449, (M.D. Pa. Feb. 26, 2019) ("A plaintiff need only allege 'some specific identifiable trifle of injury.'") (quoting Cottrell v. Alcon Laboratories, 874 F.3d 154, 162 (3d Cir. 2017) and In re Horizon, 846 F.3d at 633) (internal citation omitted)).

Likewise, the Kellys' allegations go beyond those in Littlejohn. The Kellys did not "just alleg[e] an inaccurate disclosure statement." 2020 WL 2527017, at *7. The Kellys allege inaccurate amounts required to redeem possession of their vehicles and Defendant sending a "fictitious storage expense" statement. Complaint, ¶61. Plaintiffs also allege Defendant allowed brokers to "assess a personal property fee and/or a redemption fee to class members—each of which are not reasonable expenses incurred by Santander." ¶62.

Plaintiffs' counsel refuses to recognize that threats, uncertainty, risk, or other potential consequences that Plaintiffs themselves, or members of the alleged class, may reasonably fear

from receiving allegedly deficient "legal" communications from Defendant, attempting to pursue its rights under their consumer agreements, as alleged in this case. These reasonable reactions are actionable.

Turning to opera for a finale, in Wagner's *RING*, Wotan's legendary spear never actually hurt anyone, but its threats carried, and then dissolved, his empire.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand is denied. Plaintiffs have alleged an injury sufficient to confer Article III standing. An appropriate Order follows.

O:\CIVIL 20\20-3698 Kelly v Santander\20cv3698 memorandum deny mtr 02102021.docx