**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HUGH KELLY and CHRISTINE KELLY, individually and on behalf of all others similarly situated | ) ) ) ) | CIVIL ACTION |
| | ) | No. 2:20-cv-03698 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| SANTANDER CONSUMER USA, INC., | ) ) ) | |
| Defendant. | ) ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT** [1]

Representative Plaintiffs Hugh and Christine Kelly, on behalf of themselves and all others similarly situated, hereby file this Class Action Complaint against Defendant Santander Consumer USA, Inc. and allege as follows:

**INTRODUCTION**

1.      Plaintiffs bring this consumer class action on behalf of similarly situated residents of Pennsylvania, seeking monetary, injunctive and declaratory relief through the Uniform Commercial Code ("UCC"), independently, and in *pari materia* with the Motor Vehicle Sales Finance Act ("MVSFA"),[2] necessitated by Defendant Santander's failure to comply with the strict statutory requirements for Post-Repossession Consumer Disclosure Notices ("Notices of

---

[1] This amended complaint is filed pursuant to Rule 15(a)(1)(B). This Honorable Court stayed the briefing of the Motion to Dismiss (ECF 3) within 21 days after its service. In the event that this Honorable Court requires Plaintiffs to seek leave to amend, Plaintiffs will immediately seek leave. This amended complaint is intended to moot some challenges raised in ECF 3.

[2] The MVSFA was originally found in Chapter 7 of Title 69 of Purdon's Statutes. In 2014, it was repealed and recodified in Chapter 62 of Title 12 of Pennsylvania Consolidated Statutes.

Repossession") that Santander sent to consumer vehicle owners after the repossession of a motor vehicle securing a retail installment sales contract.

## PARTIES

2.      Hugh and Christine Kelly are adult individuals who at all relevant times resided at 114 Opal Ct, Cranberry Township, PA 16066.

3.      Santander Consumer USA Inc. ("Santander") is a corporation with its headquarters in Dallas, Texas.

4.      All Representative Plaintiffs purchased their subject vehicle in Pennsylvania.

5.      Santander caused all Representative Plaintiffs' and (putative) class members' vehicles to be repossessed in Pennsylvania.

6.      Santander is a nationally chartered bank which purchases retail installment sales contracts through vehicle dealerships, including through Chrysler franchise dealerships under the name of "Chrysler Capital."

7.      While some Notices of Repossession sent by Santander listed the sender as "Santander Consumer USA Inc.," and others listed the sender as "Chrysler Capital," all were caused to be sent by Santander, who was the holder, owner, and servicer of all subject loans at issue.

8.      At all relevant times, FCA US LLC (formerly Chrysler Group LLC) permitted Santander to use the Chrysler Capital trade name when providing financing services to its dealers and retail customers.

## VENUE

9.      Santander regularly and systematically conducts business throughout Pennsylvania.

## DEFINITIONS

10.    **Debtor**: The term "Debtor" is "A: (1) person having an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor ..." *See*, 13 Pa. C.S.A. §9102.

11.    **Good Faith**:  The term "Good Faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing. 13 Pa.C.S.A. §1201; See, "Obligation of Good Faith" below.

12.    **Motor Vehicle**:  Except as otherwise stated, the terms "Motor Vehicle" and "Vehicle" mean a device in which, upon which, or by which a person or property is or may be transported or drawn upon a public highway, including an automobile, a truck, a sports utility vehicle, a van, a minivan, a camper, a recreational vehicle, a motorcycle, or a truck. The term is not intended to include a semitrailer or manufactured home.

13.    **Notice of Repossession**: The term "Notice of Repossession" refers to a post-repossession consumer disclosure notice and has the same meaning as the term "notification of disposition," in 13 Pa.C.S.A. §§9611, 9613, and 9614 and as "Notice of Repossession" in 12 Pa.C.S. §6254. Santander used at least one standardized, uniform form throughout the Class Period. The only information modified in the Notices of Repossession that is unique to each customer consists of amounts, personally identifiable information, unique data pertaining to the repossessed vehicle, the customer's loan information, and dates.

14.    **Obligation of Good Faith**: The term "Obligation of Good Faith" refers to the requirement that "Every contract or duty within this title imposes an obligation of good faith in its performance and enforcement." 13 Pa. C.S.A. §1304.

3

15.   **Obligor:** The term "Obligor" refers to A person that, with respect to an obligation secured by a security interest in or an agricultural lien on the collateral: (1) owes payment or other performance of the obligation; (2) has provided property other than the collateral to secure payment or other performance of the obligation; or (3) is otherwise accountable in whole or in part for payment or other performance of the obligation. The term does not include any issuer or nominated person under a letter of credit.

16.   **Personal Property Fee:** The term "Personal Property Fee" refers to a fee that Santander and/or a third party repossessor, and/or the auction selling the repossessed vehicle charged to (and/or would have charged to) Representative Plaintiff and/or (putative) class members as a precondition to: (a) to regain possession of his/her/their personal belongings left in the repossessed vehicle; (b) to redeem their repossessed vehicle; and/or, (c) reinstate their loan.

17.   **Post-Sale Notice:** The term "Post-Sale Notice" is a post-sale consumer disclosure notice which has the same meaning as the term "Explanation of Calculation of Surplus or Deficiency" in 13 Pa.C.S.A. §9616.  This term also refers to the "deficiency notice" as required by 12 Pa.C.S. §6261(d).

18.   **Redeem/Redemption:** Unless stated otherwise, the terms "Redeem" and "Redemption" mean a "buy back" of the repossessed vehicle by terminating the contract upon payment of the unpaid portion of the amount financed and the finance charge, plus late charges, costs of retaking, repairing and storing the vehicle, and any other amounts lawfully due under the contract. 12 Pa.C.S.A. §6259.

19.   **Redemption Fee:** The term "Redemption Fee" refers to a fee that Representative Plaintiffs and (putative) class members were required to pay Santander, and/or a third party

4

repossessor, and/or the auction selling the repossessed vehicle, as a precondition to redeem (buy back) their repossessed vehicle or reinstate his/her/their contract.

20.     **Schumer Box**: The term "Schumer box" is a table with a standardized format that discloses the rates, fees, terms and conditions of a credit card or other lending agreement as required under the federal Truth in Lending Act (TILA).

21.     **Storage Expense or Storage Fee**: The term "Storage Expense" or "Storage Fee" is a fee or expense (depending on if incurred by Santander) listed on the Notices of Repossession purportedly for the storage of the repossessed vehicle.

## FACTUAL BACKGROUND

22.     In approximately June 2017, Santander caused Hugh and Christine Kelly's 2006 Chrysler Pacifica to be repossessed. Santander then sent them each a Notice of Repossession (**Exhibit 1** and **Exhibit 2**) dated June 16, 2017. After Santander sold the vehicle, Santander sent them each a Post-Sale Notice dated June 24, 2018. (**Exhibit 3** and **Exhibit 4**).

23.     The Notices of Repossession sent to the Plaintiffs and all class members had the following identical or substantially similar language:

**As of the date of this notice, you can redeem the Vehicle by paying us the following:**

| | | |
|---|---|---|
| 1) | Unpaid balance: | $ xxx.xx |
| 2) | Accrued Interest: | $ xxx.xx |
| 3) | Unpaid default charges due: | $ xxx.xx |
| 4) | Repossession expenses: | $ xxx.xx |
| 5) | Storage expenses **incurred** through date of this Notice (@ **$25.00 per day**) | $ 25.00 |
| 6) | Other: [specify]_____ | $ xxx.xx |
| | **Total sum required to redeem as of date of this Notice*** | $ xxx.xx |

(Emphasis added to the word "incurred" and "$25.00 per day")

5

24.     Santander, however, as a matter of uniform policy, procedure, and practice, did not pay to any third party or otherwise "***incur***" any expense[3] for storing the repossessed vehicles of the Representative Plaintiffs or (putative) class members ***as of the date of the Notice of Repossession***.

25.     The Post-Sale Notices attached hereto as **Exhibits 3** and **Exhibit 4** each reflect $0 for the "cost of storing the vehicle," thereby evidencing that the itemization of the Storage Expense on the Notices of Repossession was systematically wrong.

26.     Because the Storage Fee in the Notice of Repossession was inaccurate, the total amounts due for Redemption in the Notices were, as a matter of policy, procedure, and practice not accurate.

27.     In addition to the Storage Fee, Santander (or its broker) has arrangements with the repossessor, repossession broker, and/or auction permitting the assessment of a Redemption Fee and/or Personal Property Fee.

28.     The Notice of Repossession sent to all Plaintiffs and putative class members failed to inform them that, if he/she/they wanted to redeem their vehicle, they would need to pay a Redemption Fee and/or a Personal Property Fee, both of which were not bona fide expenses to Santander as they were not reasonable, necessary, nor actually incurred (nor would be incurred).

29.     Or, in the alternative and/or in addition, if either of these fees were incurred by Santander as relating to a Redemption, then – in such instance - Santander would be acting as a collection agent for the repossessor, repossession broker, and/or action for such "fees," mischaracterizing both (or either) of them as expenses to the debtor (putative) class members.

---

[3] An "expense" is "an expenditure of money…." *Black's Law Dictionary Abridged*, 7th Ed. at 473.

30.     Or, in the alternative and/or in addition, Santander failed to disclose these fees in the Notices of Repossession it sent to the Representative Plaintiffs and (putative) class members. The assessment of these fees, irrespective of whether they were disclosed, nonetheless violates the statute(s) as set forth below.

### THE UCC AND MVSFA MUST BE READ *IN PARI MATERIA*

31.     Santander, as a secured creditor who elects to exercise self-help repossession of motor vehicles is required to comply with both the UCC, independently, and in *pari materia* with the MVSFA, 12 Pa.C.S.A. §6201, *et seq*. These statutes much be applied in *pari materia*. *Industrial Valley Bank & Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 (1985).

32.     The Eastern District of Pennsylvania and other trial courts in Pennsylvania have have certified similar claims involving defective Notices of Repossession and, adhering to *Industrial Valley Bank and Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 1263 (Pa. Super. Ct. 1985), have held that the secured creditor must comply with the MVSFA in *pari materia* with the UCC to ensure that the notice is commercially reasonable, pursuant to the UCC.

A.  *Dudo v. Capital One, N.A.*, 296-2020 (CCP Jefferson County)(final approval order): "Common issues of law and fact ... predominate over potential individual issues, including whether Defendant complied with certain content requirements of the MVSFA independently, and the UCC and MVSFA in *pari materia* regarding forms Defendant used when issuing post-repossession consumer disclosure notices sent to all class members --- such that Defendant's failure to comply is per se commercially unreasonable as a matter of law. *Ryan v. Tidewater Finance Co.*, 03529-2017 (Phila. CCP., July 23, 2018). **Exhibit 5**.

B.  *Ryan v. Tidewater Finance Finance Co, supra.*, 03529 Sept. Term, 2017 (preliminary approval order): "The question of sufficiency or commercial reasonableness of Tidewater's form disclosures do not vary among Class Members because each omit the same mandatory content and were mailed in the same manner. ... A disclosure notice cannot be commercially reasonable if the text violates the MVSFA, the UCC, or the MVSFA and the UCC in *pari materia* and form notices and/or standardized practices." **Exhibit 6**.

C. *Cosgrove v. Citizens Auto. Finance, Inc.*, 2011 WL 3740809 (E.D. Pa. 2011)("The Pennsylvania UCC does not define "reasonable" notice, but Pennsylvania courts define the term by looking at statutes governing vehicle finance and repossession. See, *Industrial Valley Bank and Trust Co. v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254 1263 (Pa. Super. Ct. 1985);" and,

D. *McCall v. Drive Financial Services, L.P., et al.*, January Term, 5 (2006)(certifying a post-repossession disclosure notice class action stating "[t]he legislature, through the UCC and the MVSFA, requires secured parties to provide consumers with specific, detailed notices of repossession and sale)." **Exhibit 7**.

33.    "Statutes or parts of statutes are in *pari materia* when they relate to the same persons or things or to the same class of persons or things." 1 Pa. C.S. §1932(a). "Statutes in *pari materia* shall be construed together, if possible, as one statute." 1 Pa. C.S. §1932(b).

34.    The MVSFA sets forth notice requirements for secured parties who repossess other than by legal process. Likewise, the UCC sets forth the notice requirements for secured parties who repossess other than by legal process. Therefore, these statutes clearly relate to the same persons or things and/or to the same class of persons or things, debtors whose vehicles were repossessed outside the judicial process.

35.    Further, Comment 9 to 13 Pa.C.S.A.§9620 states:

> **Applicability of Other Law**. This section does not purport to regulate all aspects of the transaction by which a secured party may become the owner of collateral previously owned by the debtor. For example, a secured party's acceptance of a motor vehicle in satisfaction of secured obligations may require compliance with the applicable motor vehicle certificate-of-title law. State legislatures should conform those laws so that they mesh well with this section and Section 9-610, and courts should construe those laws and this section harmoniously. A secured party's acceptance of collateral in the possession of the debtor also may implicate statutes dealing with a seller's retention of possession of goods sold.

36.     Comment 9 specifically directs courts to construe UCC provisions "harmoniously," i.e. in *pari materia*, with other laws that regulate secured transactions. The MVSFA is such a law.[4]

## STATUTORY VIOLATIONS

### Deficiencies in Notices of Repossession

37.     In the course of the repossession and disposition process, Santander had a statutory obligation to provide a "reasonable authenticated notification of disposition" (i.e. "Notice of Repossession") of the collateral, containing important mandatory information about the repossession and intended disposition of the vehicle. 13 Pa.C.S.A. §9611, §9614 and 12 Pa.C.S.A. §6254.

38.     A Notice of Repossession that lacks **any** of the required information is ***insufficient as a matter of law***. 13 Pa.C.S.A. §9614, comment 2.

39.     Section 9623(b) of the UCC states:

> "...[t]o redeem the collateral, a person shall tender ... (2) the reasonable expenses and attorney <u>fees described in section 9615(a)(1)(relating to application of proceed)</u>." (emphasis added).

40.     Thus, Santander's Notices of Repossession, which claims to inform the vehicle owner how much he/she/they will have to tender to Redeem the vehicle, can only include in that Redemption Amount those expenses listed in Section 9615(a)(1).

41.     Section 9615(a)(1) limits these expenses to:

> "the **reasonable expenses** of retaking, holding, preparing for disposition, processing and disposing...**incurred by the secured party**." (emphasis added).

42.     Further, the MVSFA states that a secured party can only be reimbursed for expenses

---

[4] Plaintiffs do <u>not</u> assert claims under the MVSFA, independently, seeking a private right of action. Rather, Plaintiffs' claims for violation of the MVSFA are asserted in *pari materia* with the UCC only.

that are "actual, necessary and reasonable." 12 Pa.C.S. §6256.

43.     At all relevant times, as a matter of standardized policy, procedure, and practice, Santander did <u>not</u> incur the amount it listed in the Notices of Repossession as a Storage Expense. Therefore, it could not include that amount in its Notices of Repossession.

44.     Moreover, Santander sent Notices of Repossession that failed to disclose a Redemption Fee and/or Personal Property Fee – payment of one or both of which were required in order for the Representative Plaintiffs and (putative) class members to Redeem his/her/their vehicle.

45.     As a result of the above averments regarding the Storage Fee, Redemption Fee, and/or Personal Property Fee, the total amounts due for Redemption listed in the Notices of Repossession sent to the Representative Plaintiffs and (putative) class members were not accurate, in violation of 12 Pa.C.S. §6254(c)(2), §6256, 13 Pa. C.S. §9615, §9623, §9610 and the UCC and MVSFA in *pari materia*.

46.     In the alternative and/or in addition, Santander charged Redemption Fees and/or Personal Property Fees that purportedly incurred, acting in essence, as a collection agent for the repossessor(s), repossession broker(s), and/or auction(s). These fees were, nonetheless, not actual, necessary, nor reasonable, in violation of 13 Pa.C.S. §9615(a)(1), §9623(b), and/or 12 Pa.C.S. §6254(c)(2) and §6256 in *pari materia* with the UCC.

47.     At all relevant times, Santander permitted (and ratified the conduct of its) repossessors, repossession agents, and/or auctions to charge Redemption Fees and/or Personal Property Fees.

48.     Santander violated both the UCC, independently, and in *pari materia* with the MVSFA, including the following ways: (1) failing to disclose fees that were purportedly required

to be paid in order for Plaintiffs and class members to Redeem, resulting in an inaccurate amount required to Redeem; and, (2) charging (and/or permitting third parties to charge) fees that were unincurred and/or not actual, necessary, and/or reasonable; and/or, (3) inflating the Redemption amount as stated in the Notice of Repossession and/or listing an inaccurate Redemption Amount.

### Commercial Unreasonableness/Violation of Good Faith

49.     There are two overarching principles that must guide a secured creditor's conduct in repossessing and selling a financed vehicle. First, all aspects of its conduct must be "commercially reasonable," as required by Section 9610(b).  Section §9610(b) of the UCC requires that *all aspects* of the sale of a repossessed vehicle must be commercially reasonable. It further expressly prohibits the sale of the collateral if the sale is not commercially reasonable. The statute states, in relevant part, as follows:

> (b)   Commercially reasonable disposition – *Every* aspect of a disposition of collateral, including the method, manner, time, place and other terms, *must be* commercially reasonable. [*Only*] *If* commercially reasonable, a secured party may dispose of collateral by **public** or **private** proceedings. …
> (Emphasis added).

50.     Second, regardless of whether there is ultimately a reinstatement of the loan or a redemption or sale of the repossessed vehicle, a secured creditor must fulfill its Obligation of Good Faith to conduct itself honestly and observe reasonable commercial standards of fair dealing. *See*, 13 Pa. C.S §1201 and §1304.

51.     At all relevant times, as Santander had possession, custody, and control of motor vehicles which were not owned by itself, it had a fiduciary duty and/or a bailor's duty towards Plaintiffs and the putative class members.

52.     The actions and omissions by Santander averred above are commercially unreasonable in violation of 13 Pa.C.S.A.§9610(b) and/or are a violation of Santander's

11

Obligation of Good Faith and/or its bailor/fiduciary duty that it owed to Plaintiffs and class members. All claims herein are set forth within the ambit of the UCC, Article 9, which has a statute of limitations of 6-years. See, *Cubler v. TruMark Financial Credit Union*, 83 A.3d 235 (2013).

## DAMAGES

53.    13 Pa. C.S.A. §9625(c)(2) allows consumer Debtors/Obligors such as Plaintiffs and Class Members to recover statutory damages equal to the credit service charge (finance charge) plus 10% of the principal amount of the obligation (amount financed). These figures are readily determinable simply by a review of the Schumer Box of each Class Members' retail installment sales contract.

54.    The Official Comments to the UCC are entitled to great weight under Pennsylvania law. Comment 4 to Section 9625 makes clear that these statutory damages are intended to establish a secured party's liability for violations of, *inter alia*, the notice provisions in consumer goods transactions, regardless of whether "actual damages" are greater, lesser, or even absent. That comment states in pertinent part:

> 4. **Minimum Damages in Consumer-Goods Transactions.** Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, **regardless of any injury that may have resulted**. [emphasis added] Official Comment to §9625(c)(2).

## CLASS ALLEGATIONS

55.    Plaintiffs bring this action on their own behalf and on behalf of the following class of individuals designated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

56.     Plaintiffs propose the "Notice of Repossession Class" defined as: All Debtors, Obligors, and Co-Obligors:

> (a) who entered into a retail installment sales contract for the financing of the purchase of a Motor Vehicle primarily used for personal, family or household use in Pennsylvania; and,
>
> (b) from whom Santander, as secured party, repossessed the vehicle or ordered it to be repossessed, causing a repossession to occur in Pennsylvania; and,
>
> (c) to whom Santander sent a Notice of Repossession to a Pennsylvania address at any time on or within the period commencing six years prior to the filing of the original complaint in this action through the date of class certification:
>
> > i. which listed an amount (other than $0) for "Storage expenses incurred through date of this Notice," and/or,
> >
> > ii. who were sent a notice with an identification of "PA-NOI-420," "PA-NOI-450," or "PA-NOI-420_2799_050713."

57.     Plaintiffs reserve the right to amend this class definition.

58.     Plaintiffs believe that there are at least 39 members of this (putative) class. This class is sufficiently numerous that joinder of all members would be impractical.

59.     The class and any trial would be readily manageable as the claims relate to standardized policies, procedures, and/or practices and disclosure notices based on standardized template forms.

60.     There are questions of law and fact common to all Plaintiffs and Class Members include but are not limited to the following:

> (a) Whether Plaintiffs and the Class obtained Motor Vehicle financing through Santander and pledged their vehicle as collateral;
>
> (b) Whether each Class Member had his/her vehicle repossessed in Pennsylvania;

13

(c) Whether Santander was the secured creditor of each Class Member's subject vehicle loan at the time of repossession;

(d) Whether Santander sent a Notice of Repossession to the Class Member within six years prior to the filing of the original complaint; and,

(e) Whether the subject Notice of Repossession complied with the UCC, independently, and the UCC and MVSFA in *pari materia*.

61.     The Representative Plaintiffs' claims are typical of those of the class. All are based on the same factual and/or legal theories. Santander was the secured creditor on Plaintiffs' and Class Members' consumer vehicle loans. Santander declared a default on all Plaintiffs' and Class Members' loans. Additionally, Santander repossessed their vehicle(s), and sent Notices of Repossession to them based on the same or substantially similar forms and with the same or substantially similar deficiencies.

62.     Plaintiffs will fairly and adequately represent and protect the interests of the classes.

63.     The Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

64.     Plaintiffs have no conflict with Class Members in the maintenance of this action, and their respective claims are identical to or at least typical of claims of the Class Members.

65.     A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable. This class action represents the fairest and most efficient method of adjudicating this controversy.

66.     Plaintiffs and the Class Members have substantive claims that are similar, if not identical, in all material respects and will require proof of the same kind and application of the same law.

67.     Santander has acted or refused to act on grounds generally applicable to the class.

68.     There are no unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions.

69.     Plaintiffs' counsel intends to send a class notice which will include the calculation for the class members' respective statutory minimum damages and (disputed) deficiency balance, if any claimed by Santander to be then due and owing. Any class member will then be afforded adequate notice, an opportunity to be heard, and have an opportunity to opt-out of the class action (i.e., in the event that the class member chooses to seek actual damages).

70.     Minimum statutory damages can be calculated easily and with mathematical precision and can be easily determined, *inter alia*, by accessing the electronically stored records of Santander.

71.     Because most Class Members either do not know that Santander did not meet the consumer notice requirements related to their vehicle repossession, could not economically justify the effort and expense required to litigate their individual claims, or have little interest in or ability to prosecute an individual action, due to the complexity of the issues involved in this litigation, a class action is the most practical proceeding in which they can recover.

72.     The questions of law and fact common to the class predominate over any questions affecting only individual members.

73.     The prosecution of several separate actions by the members of the class would create a risk of inconsistent or varying adjudications. A class action will serve the goals of judicial economy and ensure uniformity of decision.

## COUNT 1

74.　　Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

75.　　Santander systematically violated the UCC, including but not limited to the following ways:

> (a) Sending Notices of Repossession which included a Storage Fee/Expense under the ruse of an "incurred" expense which Santander either did not incur or, in the alternative, if it did incur, the fee did not constitute a bona fide expense as such amount was not actual, reasonable, nor necessary and/or the amount / procedure to include same in Notice of Repossession was not commercially reasonable or otherwise a not permitted by statute;

> (b) Sending Notices of Repossession that failed to disclose a Redemption Fee and/or Personal Property Fee or other fees which were required in order for the Representative Plaintiffs and (putative) class members to have redeemed their vehicle; and/or,

> (c) Santander charged Redemption Fees and/or Personal Property Fees and/or other fees under the ruse of an expense which were not bona fide expenses, not actual, necessary, nor reasonable and/or permitted and ratified its third party vendor repossessors, repossession brokers, and/or auctions to assess such fees; and/or,

> (d) Acting in an otherwise commercially unreasonable manner, including violating the MVSFA [12 Pa.C.S.A. §6254(c)(2) and §6256] in *pari materia* with the UCC, its Obligation of Good Faith and Fair Dealing, and/or its fiduciary duty/bailor duty.

76.　　As a result of the foregoing, Santander violated the following UCC statutes: 13 Pa.C.S. §9610(b), 13 Pa. C.S.A. §1304, §9610(b), §9614, §9615(a)(1), and/or §9623(b).

WHEREFORE, Plaintiffs, individually and on behalf of these putative classes, request that this Honorable Court grant the following relief as against Defendant Santander as follows:

A. Certify the requested classes and appoint the undersigned as class counsel

B. Monetary Damages as provided by 13 Pa. C.S. §9625(c)(2)

16

C. Declaratory Relief

    1. Declare that the practices complained of were not commercially reasonable pursuant to 13 Pa.C.S. 9610(b);

    2. Declare that the disputed deficiency balances of Plaintiffs and class members are invalid and cannot be collected, as a matter of law; and,

    3. Declare that any loan by which a Class Member borrowed funds to refinance a disputed deficiency balance is null and void and cannot be collected, as a matter of law.

D. Injunctive and Equitable Relief

    1. Pursuant to 13 Pa. C.S. §9625(a), impose a constructive trust on all ill-gotten proceeds; order an accounting of all such proceeds, and their expedited return, with interest, by ordering the Bank to disgorge all monies received from any Class Member as a payment towards a disputed deficiency balance or as a payment towards a loan to the extent that such loan refinanced a disputed deficiency balance;

    2. Enjoin the collection of any invalid and disputed deficiency balance as permitted by 13 Pa.C.S. §9625(a);

    3. Temporarily and/or permanently enjoin the use of all statutorily non-compliant post-repossession disclosure notices and unlawful fees; and,

    4. Order Santander to make credit report reparations for the Plaintiffs and all class members by removing the credit trade lines.

E. Grant such other and further relief as may be deemed just and proper.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this pleading have been sent to all counsel of record who subscribe to the ECF, contemporaneously when filed.

SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiffs*

18