## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HUGH and CHRISTINE KELLY, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 2:20-cv-03698-MMB |
| v. | |
| SANTANDER CONSUMER USA INC., | |
| Defendant. | |

## SETTLEMENT AGREEMENT AND RELEASE

EXHIBIT

tabbies

1

## TABLE OF CONTENTS

Page

1. Definitions.................................................................................................................. 8
2. Conditions and Effectiveness of Agreement.................................................. 22
3. Identification of Class Members and Class Data............................................ 28
4. Settlement Consideration............................................................................... 29
5. Qualified Settlement Fund................................................................................. 36
6. Payments from the Settlement Fund............................................................... 37
7. Retention and Duties of Settlement Administrator....................................... 41
8. Notice to the Class and Settlement Website.................................................. 43
9. Representations and Warranties....................................................................... 45
10. Releases.............................................................................................................. 46
11. Opt Out Rights................................................................................................... 49
12. Objections.......................................................................................................... 51
13. Termination........................................................................................................ 52
14. Certification of Settlement Class for Settlement Purposes........................ 55
15. Attorneys' Fees and Litigation Costs............................................................. 56
16. Stay of Discovery and Other Proceedings..................................................... 58
17. Return/Destruction of Discovery Materials................................................. 58
18. Media and Confidentiality............................................................................... 59
19. Right to Cure...................................................................................................... 61
20. Notices................................................................................................................ 61
21. Miscellaneous Provisions................................................................................ 62

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is entered into by and between (i) Plaintiffs Christine Kelly and Hugh Kelly, individually and as class representatives on behalf of the Settlement Class, and (ii) Defendant Santander Consumer USA Inc. ("SC"). The Parties intend and agree to resolve, discharge, and settle fully, finally, and forever certain claims of the Settlement Class asserted in the class action captioned *Kelly v. Santander Consumer USA Inc.*, Civil Action 2:20-cv-3698, pending in the United States District Court for the Eastern District of Pennsylvania, subject to approval of the Court.

### RECITALS

A.      On or about June 30, 2020, Class Representatives Christine Kelly and Hugh Kelly ("the Kellys") filed a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania (the "State Court Action") alleging SC engaged in unlawful acts in connection with the repossession of their vehicle purchased as part of a consumer transaction in violation of the Pennsylvania Uniform Commercial Code ("PUCC") and the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA").

B.      On or about July 30, 2020, SC removed the State Court Action to the Eastern District of Pennsylvania pursuant to the Class Action Fairness Act ("CAFA"). ECF 1. It simultaneously filed a partial motion to dismiss and to strike immaterial or impertinent portions of the Class Action Complaint (the "Partial Motion to Dismiss"). ECF 3.

C.      On or about August 6, 2020, the Kellys filed a motion to remand the case back to state court (the "Motion to Remand") as well as a motion to stay the briefing on

the Partial Motion to Dismiss pending a decision on its Motion to Remand. ECF 8, 9. The Parties stipulated to staying briefing on the Partial Motion to Dismiss and extended the briefing schedule on the Motion to Remand, which the Court approved. ECF 10, 11.

D. On or about February 10, 2021, the Court denied the Motion to Remand, finding that the Court had subject matter jurisdiction over the claims of the Kellys and the putative class pursuant to CAFA. ECF 20, 21.

E. On or about March 9, 2021, the Kellys filed a First Amended Class Action Complaint (the "FAC" or "Complaint"), which mooted SC's Partial Motion to Dismiss. *See* ECF 22, 23.

F. On or about March 18, 2021, SC filed its Answer and Affirmative Defenses to the Complaint. ECF 24.

G. On or about May 4, 2021, the Parties began conducting discovery per the Court's order following the Fed. R. Civ. P. 16 conference earlier that day. ECF 28.

H. On or about August 5, 2021, the Court entered a scheduling order setting deadlines for discovery, dispositive motions, Plaintiffs' class certification motion, and pre-trial matters. ECF 40.

I. On August 24, 2021, Plaintiffs filed an Omnibus Motion: (1) to Compel Discovery and Rule 26(a) Disclosures; and, (2) for Leave to Take Preliminary Rule 30(B)(6) Deposition Limited to Electronic Discovery Issues and Burdensome Objections (ECF 44) and corresponding brief (ECF 44-1).

J.      On September 3, 2021, Defendant filed a Motion for Protective Order as to Plaintiffs' Deposition Subpoena to Kelly Neptune and Notices of Videotaped Deposition of Missi Palmore and Tony Angelone. (ECF 48).

K.      Also, on September 3, 2021, Defendant filed a Motion for Entry of Remote Deposition Protocol and respective brief and supplemental memorandum (ECF 49 and 52).

L.      On September 7, 2021, Plaintiffs filed a Response to Defendant's Motion for Entry of Remote Deposition Protocol and brief, corresponding notice, and memorandum (ECF 50-51, 54, and 55).

M.      On September 8, 2021, the Court issued an Order regarding the Defendant's Motions for Protective Order.

N.      On September 21, 2021, Defendants filed a Response to Plaintiffs' Motion to Compel Discovery (ECF 60-61).

O.      By Stipulation and Order, Plaintiffs' Reply to Defendant's Response was due on or before October 12, 2021.

P.      Third party discovery motions include an Objection to Subpoena (ECF 33) and two Motions to Quash Subpoena (ECF 34 and 37).

Q.      The Parties filed a Joint Motion to Stay Litigation Pending Mediation and to Extend Case Schedule on September 30, 2021 (ECF 63), which the Court granted on October 6, 2021 (ECF 65), a First Joint Motion to Extend Stay on December 7, 2021 (ECF 70), which the Court granted on December 9, 2021 (ECF 71), a Joint Status Report and Request to Extend Deadlines by 14 Days on January 31, 2022 (ECF 73), which the Court granted on February 7, 2022 (ECF 74), and a Joint Status Report and Request to Continue

Stay on February 11, 2022 (ECF 75), which the Court granted on February 22, 2022 (ECF 76) and stayed the litigation through April 11, 2022. The Parties filed a Joint Motion to Continue Stay of Litigation on April 8, 2022 (ECF 78), which the Court granted on April 13, 2022 (ECF 79). The Parties filed a Joint Motion to Continue Stay of Litigation on June 13, 2022 (ECF 80), which the Court granted on June 15, 2022, extending the stay through and including August 15, 2022 (ECF 81). The Parties filed a Joint Motion to Continue Stay of Litigation on August 15, 2022 (ECF 82), which the Court granted on August 16, 2022, extending the stay through and including October 14, 2022 (ECF 83). Plaintiffs filed a Motion to Continue Stay of Litigation for 21-Days on October 14, 2022 (ECF 84), which the Court granted on October 19, 2022, extending the stay through and including November 4, 2022 (ECF 85).

R.    The Parties engaged in an all-day mediation with mediator Eric Green of Resolutions, LLC on January 28, 2022, and engaged in a follow up mediation on February 8, 2022.

S.    Before the stay was entered, the Parties were exchanging written discovery in this matter and had been conducting depositions.

T.    Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters in the pleadings, mediation before Mr. Green, and successful settlement discussions through Mr. Green, the Parties have agreed to settle this Action pursuant to the provisions of this Agreement.

U.    SC has denied and continues to deny each and every allegation of liability, wrongdoing, and damages, as it contends it has substantial factual and legal defenses to all

claims and class allegations asserted in the Complaint. SC has always maintained, and continues to maintain, that it has acted in accordance with governing law. The Kellys likewise maintain the strength of their positions. This Agreement shall in no event be construed as, or deemed to be evidence of, an admission or concession on the part of the Parties with respect to any claim by any Class Member, any fault, liability, wrongdoing or damage, or any defense by SC. The Parties, nonetheless, have concluded that continuing to defend against the Action would be protracted, expensive, and disruptive to their business and/or lives. They, therefore, have decided that it is desirable to fully and finally settle the Action on the terms and conditions set forth herein to avoid the further expense, inconvenience, and distraction of the Action and to dispel any related uncertainty.

V.     By this Agreement, and recognizing the consideration provided for under this Agreement, the Class Representatives and Class Counsel intend to fully and finally resolve the remaining claims against SC in connection with the Action, as more fully set forth herein.

W.     The Class Representatives and Class Counsel recognize the expense and length of proceedings necessary to continue the litigation through further discovery, motion practice, trial, and any possible appeals. They have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation, and have reviewed sufficient information (provided formally and for settlement purposes) to evaluate respective strengths and weaknesses of their respective claims and defenses. They are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto. Based upon their

evaluation, the Class Representatives and Class Counsel have determined that the settlement set forth in the Agreement is in the best interests of the Class Representatives and the Settlement Class and is fair, adequate and reasonable, based upon the following substantial benefits that the settlement bestows upon the Settlement Class:

      i.     For all Settlement Class Members, SC will fully compromise all Deficiency Balances on their SC accounts, which is estimated to be approximately One Hundred and Thirty-Seven Million Dollars ($137,000,000);[1]

     ii.     SC will pay a total of Fourteen Million Dollars ($14,000,000), non-reverter, into a Settlement Fund for the benefit of the Settlement Class and for the purposes of implementing this Settlement, which will be used, *inter alia*, to provide monetary relief to Settlement Class Members, as described below, to pay an Incentive Payment to the Class Representatives, as approved by the Court, and to pay for fees and expenses of the Settlement Administrator and Class Counsel, with any remaining funds, if any, to be distributed to the *Cy Pres* Recipient(s);

    iii.     SC will request that the Credit Reporting Agencies, Equifax, Experian, TransUnion, and any other reporting agencies SC reports to, fully delete the reporting of the Settlement Class Members' Accounts that are the subject of this Action;

    iv.     The Settlement Administrator's costs associated with disseminating the Class Notice, setting up a Settlement Website, distributing funds, and any escrow, administrative and/or bank related fees and costs associated with the Settlement Administrator's duties will be paid out of the Settlement Fund.

     X.     This Agreement and all associated exhibits or attachments are made for the sole purpose of attempting to consummate Settlement of this Action on a class-wide basis. This Agreement and the Settlement it evidences are made in compromise of disputed

---

[1] This figure is expected to be reduced, modestly, due to Sold Accounts. *See* Sections 1.51, 4.2.

claims.  Because the Action is pled as a class action, this Settlement must receive preliminary and final approval by the Court.  Accordingly, the Class Representatives and SC enter into this Agreement and associated Settlement on a conditional basis.  In the event that SC or the Class Representatives exercise a right herein to terminate or rescind this Agreement, the Court does not execute and file the Order Granting Final Approval of Settlement, or the associated Judgment does not become Final for any reason, this Agreement shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever by anyone, and the negotiation, terms, and entry of the Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, any and all state statutes of a similar nature, and the mediation privilege.

Y.     The Parties expressly reserve all rights, claims and defenses and do not waive any such rights, claims or defenses in the event that the Agreement is not approved for any reason.  The Parties agree that they each retain and reserve all rights and agree not to take a position to the contrary.  The Class Representatives and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that SC could not contest class certification and/or proceeding collectively on any grounds if the Action were to proceed or that this Agreement is evidence of or constitutes an admission that class certification may be appropriate.

1.     **Definitions.**

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

1.1.    "Action" means the case originally filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, which was removed to the United States District Court for the Eastern District of Pennsylvania on or about July 30, 2020, Case No. 2:20-cv-03698-MMB, entitled *Kelly v. Santander Consumer USA Inc.*

1.2.    "Account" or "Accounts" means each Settlement Class Member's account owned by SC related to the financing of his/her/their vehicle(s), which were subsequently repossessed, and which are the subject of this Action.  This term includes those Accounts which SC re-purchased or re-acquired from a debt buyer/collector but excludes Sold Accounts, as defined herein.[2]

1.3.    "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release and all of its attachments and exhibits, which the Class Representatives and SC understand and agree sets forth all material terms and conditions of the Settlement of the Action between them and which is subject to Court approval.  It is understood and agreed that the Parties' obligations under this Agreement are conditioned on, *inter alia*, the occurrence of the Effective Date and other conditions set forth in this Agreement.

1.4.    "Attorneys' Fees and Expenses" means such funds as may be awarded to Class Counsel pursuant to Section 15 of the Agreement for the compensation and expense reimbursement incurred in connection with the Action.

1.5.    "Class" means all SC customers:

---

[2] Note that the non-capitalized term "account(s)" used in this Agreement is not subject to this definition.

(a) who entered into a retail installment sales contract for the financing of the purchase of a Motor Vehicle; and,

(b) from whom SC, repossessed the vehicle or ordered it to be repossessed, causing a repossession to occur; and,

(c) to whom SC[3] sent a Notice of Repossession to a Pennsylvania address at any time on or within the period commencing six years prior to the filing of the original complaint in this action through July 9, 2020.

1.6.     "Class Counsel" means, Richard Shenkan, Esq. of Shenkan Injury Lawyers, LLC and Lawrence F. Stengel, Esq. of Saxton & Stump, LLC.

1.7.     "Class Member(s)" or "Member(s) of the Class" means any member of the Class according to the Class definition herein.

1.8.     "Class Opt-Out" and "Mass Opt-Out" mean a document purporting to represent more than one Class Member's intent to Opt-Out of this Settlement.

1.9.     "Class Period" means June 30, 2014 through and including July 9, 2020.

1.10.     "Class Representatives" means Christine Kelly and Hugh Kelly, the named plaintiffs and proposed class representatives in the Action identified in the first Section of this Agreement.  Christine Kelly and Hugh Kelly shall also be treated as Class Members, as applicable, where that term is used.

---

[3] SC does business under other names, including Chrysler Capital.  Certain Class Members may have received a Notice of Repossession on letterhead from Chrysler Capital.  All Notices of Repossession at issue included reference to either Santander Consumer USA Inc. or Chrysler Capital.

1.11.   "Class Releasors" means the Class Representatives, all Settlement Class Members, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by or through any or all of them.

1.12.   "Class Releasees" means the Class Representatives, all Settlement Class Members, and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any other person claiming by or through any or all of them.

1.13.   "Collector(s)" means any third party to whom SC sold, assigned, and/or otherwise transferred any Class Member(s)' Account(s).

1.14.   "Complaint" means the operative First Amended Class Action Complaint filed by the Class Representatives in the Action.

1.15.   "Consumer Credit Report" refers to an individual's credit report as issued by any of the three major Credit Reporting Agencies.

1.16.   "Court" means the United States District Court for the Eastern District of Pennsylvania.

1.17.   "Credit Reporting Agency" or "Credit Reporting Agencies" or "Credit Bureau" refers to TransUnion, Experian, Equifax, and any other credit reporting agency to which SC reports.

1.18.   "Cy Pres Recipient(s)" are the Pennsylvania Bar Foundation Pro Bono Fund and the National Foundation for Credit Counseling.  Any cy pres funds shall be equally divided.

1.19.   "Defendant" refers to SC.

1.20.   "Deficiency Balance" for purposes of this Settlement, means the Account balance remaining after the repossession and disposition of a Settlement Class Member's vehicle, after crediting the Class Member's Account with the sale price of the vehicle and including all interest and other charges, as reflected in the class data shared with Class Counsel on August 6, 2021 at Bates number Santander-Kelly-001072 which will be supplemented in the Notice List.  This excludes any balance on an Account where the Class Member reinstated their Account and continues to have possession of the repossessed vehicle as of the Expiration of the Repurchase Period or arising from any repossession after July 9, 2020.  The Parties agree that the Deficiency Balances for all Settlement Class Members are disputed and that claims and defenses of SC and the Settlement Class Member which arise from any repossession after the Class Period are not affected by this Settlement.

1.21.   "Deficiency Balance Compromise" refers to the compromise of a Settlement Class Member's Deficiency Balance, (which includes Account balances which were sold and/or assigned to Collectors, and which were repurchased or reacquired by SC), which is considered a disputed debt by the Parties.

1.22.   "Defense Counsel" shall mean Defendant's counsel of record in the Action.

1.23.   "Distribution Date" means the date when the Settlement Administrator commences distribution from the Settlement Fund to Class Members, which shall be no more than sixty (60) days after the Effective Date.

1.24.    "Effective Date" means the date when all of the conditions set forth in Section 2 have occurred, provided, however, that neither Party has exercised its right of termination under Section 13 of this Agreement.

1.25.    "Final" means five (5) business days after the latest of: (i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Judgment; (iii) if no appeal is filed, the expiration of the date of the time for the filing or noticing any form of valid appeal or writ review from the Judgment.  If the Judgment is set aside, modified, or overturned by any court including on appeal and is not fully reinstated on appeal, the Judgment shall not become final.

1.26.    "Final Approval Hearing" means a hearing set by the Court to take place on or about the date which is at least twenty-one (21) days after the Opt-Out Deadline for the purpose of:

(i)    Determining the fairness, adequacy and reasonableness of the Agreement and associated Settlement pursuant to class action procedures and requirements;

(ii)    Determining the good faith of the Agreement and associated Settlement; and

(iii)    Entering Judgment.

1.27.    "Final Approval Order," "Order of Final Approval," and "Order Granting Final Approval of Settlement" shall mean an order to be entered by the Court granting final approval to this Settlement and entering a final judgment.  The parties agree to submit **Exhibit 3** to the Court as their proposed Final Approval Order.

1.28.   "First Distribution" means the first distribution of the Settlement Fund to Settlement Class Members as set forth in Section 6.1.1.   The amount of the First Distribution for each Account is based on the Settlement Fund amount of $14,000,000, less Attorneys' Fees and Expenses, Settlement Administration Costs, and Incentive Payments, and divided by the number of Accounts.[4]

1.29.   "Fourth Distribution" means the issuance of checks to each of the Settlement Class Members who are eligible for same pursuant to Section 6.1.4, as well as the mailing of same to any address that the Settlement Administrator reasonably believes to be valid.

1.30.   "Judgment" means the Final Approval Order and judgment to be rendered by the Court pursuant to this Agreement.   The parties agree to submit **Exhibit 3** to the Court as their proposed Final Approval Order.

1.31.   "Notice" or "Class Notice" means a notice entitled "Notice of Proposed Settlement of Class Action" to be approved by the Court, substantially in the form attached hereto as **Exhibit 1**, and mailed by the Settlement Administrator to potential Settlement Class Members.

1.32.   "Notice Approval Date" means the date of the Preliminary Approval Order when the Court approves the Notice.

---

[4] For illustrative purposes only, if Attorneys' Fees, Expenses, Settlement Administrative Costs, and Incentive Payments are $6,000,000, and if there are 40,000 Accounts, then the First Distribution will be $200 for each Account.

1.33.    "Notice List" means a list, to be treated as Confidential pursuant to the terms of the Protective Order, containing the information set forth in Section 3.1.

1.34.    The "Notice Mailing Date" shall be a date no later than ninety (90) days after SC provides the Settlement Administrator with the Notice List, when the Notice is mailed to the individuals on the Notice List.

1.35.    "Notice of Repossession" means the notice SC sent a putative Class Member between June 30, 2014 and July 9, 2020 that (i) listed an amount (other than $0) for "Storage expenses incurred through date of this Notice", and/or, (ii) was a form notice with an identification of the form number, including, but not limited to, "PA-NOI-420", "PA-NOI-450", or "PA-NOI-420_2799_050713."

1.36.    "Objection Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Settlement Class Member must serve written objections to the Settlement, if any, in accordance with Section 12 of this Agreement to be able to object to the Settlement.  The Objection Deadline shall be sixty (60) days after the Notice Mailing Date.

1.37.    "Opt-Out Deadline" means the date identified in the Preliminary Approval Order and Class Notice by which a Request to Opt Out must be filed or submitted in writing to the Settlement Administrator in accordance with Section 11 of this Agreement in order for a person who would otherwise fall within the definition of Settlement Class to be excluded from the Settlement Class.  The Opt-Out Deadline shall be sixty (60) days after the Notice Mailing Date.

1.38.    "Parties" means the Class Representatives, on behalf of themselves and all Members of the Settlement Class, Class Counsel, and SC and its counsel.

1.39.    "Post-Approval Payments" means any monies paid to SC by any Settlement Class Member on or after the Effective Date toward the Settlement Class Member's Deficiency Balance which is being compromised.

1.40.    "Preliminary Approval Order" shall mean a proposed order for the Court to consider executing entitled "Order Preliminarily Approving Settlement and Providing for Notice".  The parties agree to submit **Exhibit 2** to the Court as their proposed Preliminary Approval Order.

1.41.    "Protective Order" shall mean the Protective Order entered in the Action by Judge Michael Baylson on June 30, 2021.

1.42.    "Released Class Claims" means any and all claims, defenses, demands, actions, causes of action, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to (1) allegations that were or could have been asserted in the Complaint against SC relating to the Settlement Class Members' Accounts; or (2) any claim regarding or relating

to the Notice of Repossession or any claim relating to the repossession or disposition of the Settlement Class Member's vehicles.  The Released Class Claims do not include (a) claims arising out of the failure of any Party to perform in conformity the terms of this Agreement; (b) claims relating to any other loan or account not encompassed by the Action, including any Sold Account; or (c) claims or defenses arising from any repossession after the Class Period.

1.43.  "Released SC Claims" means any and all claims, defenses, demands, actions, causes of action, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether known or unknown, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that (1) SC could have asserted in the Action that arise out of or relate to the Account; or (2) any claim regarding or relating to the Notice of Repossession or any claim relating to the repossession or disposition of the Settlement Class Member's vehicles, including collection of Settlement Class Members' Deficiency Balances that SC is fully compromising as part of this Agreement.   The Released SC Claims do not include (a) claims arising out of the failure of any Party to perform in conformity the terms of this Agreement; (b) claims relating to any loan or account not encompassed by this Action, including any Sold Account; or (c) claims or

defenses arising from any repossession after the Class Period. Nothing in this definition shall be construed as a limitation on SC from accepting payment by a Class Member, repossessing vehicles, or administering collections on Accounts that were reinstated and do not have a Deficiency Balance.

1.44. "Repurchase Period" means a time period ending no later than one hundred twenty (120) days after the Preliminary Approval Order during which SC shall use its best efforts to attempt to repurchase or re-acquire all rights, title, and interest to Class Member(s)' accounts which it sold, assigned, or transferred to any Collector(s).

1.45. "SC Releasees," "the SC Releasees," or "the Released SC Parties" means (1) SC; (2) each of SC's past, present, or future subsidiaries, parent companies, divisions, affiliates, partners or any other organization units of any kind doing business under their names, or doing business under any other names, or any entity now or in the past controlled by, controlling, or under the common control with any of the foregoing and doing business under any other names, and each and all of their respective affiliates and subsidiaries, and each of their respective predecessors, successors, and assigns; and (3) each of the present and former officers, directors, partners, shareholders, agents, employees, attorneys (including any consultants hired by counsel), advisors, independent contractors, representatives, beneficial owners, insurers, accountants, heirs, executors, and administrators, and each of their respective predecessors, successors, and assigns of any person or entities in subparts (1) or (2) hereof. This definition does not include any Collector, debt buyer, and/or other entity who was the purchaser or assignee of any Sold Account, including if they are or become subsidiaries, divisions, affiliates, or partners of

SC.  By way of illustration, if SC is not able to repurchase any account which it sold, assigned, or transferred to a Collector, debt buyer, and/or other entity who was the purchaser or assignee of any Sold Account during the Repurchase Period, then that Collector, debt buyer or other entity is not included in this definition with respect only as to those accounts that could not be repurchased.

1.46.    "Second Distribution" means the re-issuance of checks to each of the Settlement Class Members whose checks from the First Distribution were voided by the Settlement Administrator because they were returned as undeliverable or remained uncashed upon expiration of the sixty (60) day period following the date of the First Distribution, as well as the mailing of same to any address that the Settlement Administrator reasonably believes to be valid.

1.47.    "Request to Opt-Out" means the signed, written request from a Class Member who seeks to exclude himself/herself from the Settlement Class and that complies with the requirements set forth in Section 11 of this Agreement.

1.48.    "RISC" means a motor vehicle retail installment sales contract for the purchase of a motor vehicle entered into by a Settlement Class Member.

1.49.    "Settlement" means the settlement terms set forth in this Agreement.

1.50.    "Settlement Administrator" means Class-Settlement.com, which will act as the Settlement Administrator and assist with implementing and effectuating the terms of this Agreement, or another settlement administrator approved by the Court.

1.51.    "Settlement Class" means the collective group of all of the Class Members who do not properly and timely exclude themselves from a Settlement, and thus means the

collective group of all of the Class Members who will become bound by the Judgment when the Effective Date occurs.

1.52. "Settlement Class Member" or "Member of the Settlement Class" means any person who is a member of the Settlement Class.

1.53. "Settlement Fund" means the Fourteen Million Dollars ($14,000,000) that SC shall pay pursuant to Section 4 of the Agreement. The Settlement Fund is for the benefit of the Settlement Class and will be used to pay Class Members, the Incentive Awards, Attorneys' Fees and Expenses, and all costs of settlement administration. Under no circumstances shall SC's total financial obligation relating to the Settlement exceed Fourteen Million Dollars ($14,000,000).

1.54. "Settlement Website" means the website to be established by the Settlement Administrator as set forth in Section 8.

1.55. "Sold Account" means those Class Member Accounts at SC that have been sold to a third party and which Account has not been re-purchased or re-acquired by SC as of the date SC provides the Settlement Administrator with the Notice List, as required by Section 3.1.

1.56. "Third Distribution" means the issuance of checks to each of the Settlement Class Members who are eligible for same pursuant to Section 6.1.3, as well as the mailing of same to any address that the Settlement Administrator reasonably believes to be valid.

1.57. "Unknown Claims" mean any Released Class Claims which any Class Releasor does not know or suspect to exist in their favor at the time of the entry of the Judgment, and which, if known by them might have affected their settlement with and

release of the Class Releasees, or might have affected a Class Member's decision to opt out of the Settlement Class or to object to this Settlement.  With respect to any and all Released Class Claims, the Parties stipulate and agree that, upon the Effective Date, the Class Representatives and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment to the fullest extent allowed by law, expressly waived the provisions, rights, and benefits of any statute or principle of common law which provides that general releases do not extend to claims which the debtor does not know or suspect exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the creditor.  Each Class Releasor may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released Class Claims, but the Class Releasors, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released to the fullest extent allowed by law any and all Released Class Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which existed at any time during the Class Period, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, contract, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Class Representatives acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the

foregoing waiver was separately bargained for and a material term of the Settlement of which this release is a part.

1.58.    The plural of any defined term includes the singular, and the singular of any defined term includes the plural.

1.59.    Other terms are defined in the text of this Agreement and shall have the meaning given to those terms in the text.  In all documents related to the Settlement, capitalized terms shall have the meanings given to them in this Agreement.

**2.    Conditions and Effectiveness of Agreement.**

2.1.    This Agreement is expressly contingent upon the satisfaction, in full, of the material conditions set forth below.  The Effective Date of this Agreement shall be the date when all of the following actions and events listed below have occurred.

2.2.    By signing this Agreement, SC represents and warrants that as of June 6, 2021, to the best of SC's knowledge, information, and belief, according to SC's business records, assuming all accounts of putative Class Members that were sold are successfully repurchased/reacquired, (a) there are 38,920 unique loans of Class Members which are the subject of this litigation, including accounts which SC has sold or assigned to a Collector(s); (b) there are 49,927 (putative) Class Members; and, (c) the total amount of Deficiency Balances for the unique loans is $136,888,647.96.  See "Sold Accounts," as defined above and Section 3.1.  This information was derived from a computer query of SC's records perform on or around June 6, 2021, the results of which were provided to Class Counsel prior to settlement.  SC agrees to update the information in this Paragraph,

by way of a letter from SC's counsel, when it transmits the Notice List to the Settlement Administrator pursuant to Section 7.3.

2.3.   <u>Class Action Fairness Act</u>.  This Settlement shall be administered as if governed by 28 U.S.C. § 1715.  The Defendant shall direct the Settlement Administrator to prepare and send the notices required by 28 U.S.C. § 1715 to all appropriate federal and state officials within ten (10) days after the Motion for Preliminary Approval is filed, but in no event shall the Final Approval Hearing take place prior to the provision of effective notices and the expiration of the statutory time.  The cost in connection with the Settlement Administrator's services to prepare and send the CAFA notices shall be paid from the Settlement Fund.  The Settlement Administrator shall provide the CAFA notice to Class Counsel.  The Final Approval Order shall make a finding that 28 U.S.C. § 1715 was complied with fully.

2.4.   Court Approval.  The Court approves this Agreement in accordance with the following steps:

2.4.1.   <u>Motion for Preliminary Approval</u>.  Class Counsel shall provide a draft of the Motion for Preliminary Approval at least four (4) business days before filing, and thereafter shall engage with Defense Counsel in a good faith consultation prior to filing.  Class Counsel will present a Motion for Preliminary Approval to the Court within twenty (20) days of execution of this Agreement including the Class Notice, in substantially the form of **Exhibit 1** hereto, and the Preliminary Approval Order, in substantially the form of **Exhibit 2** hereto.

2.4.2.  <u>Certification of Class for Settlement Purposes</u>.  In connection with the proceedings for Preliminary and Final Approval, the Class Representatives shall seek orders (Preliminary and Final, respectively) certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure for purposes of this Settlement only.

2.4.3.  <u>Entry of Preliminary Approval Order</u>.  The Court shall enter a Preliminary Approval Order, which shall among other things:

a.      Preliminarily certify the proposed Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

b.      Preliminarily approve this Agreement as fair, reasonable and adequate under Rule 23 of the Federal Rules of Civil Procedure subject to final determination by the Court;

c.      Approve the appointment of the Class Representatives as representative of the Class for the Settlement and the appointment of Class Counsel;

d.      Approve Class-Settlement.com, or another administrator of the Court's choosing, as the Settlement Administrator, permitted to handle the mailing and processing of all notices, checks, and the disposition of the Settlement Fund;

e.      Approve a form of Notice substantially in the form of **Exhibit 1** to be sent to the individuals on the Notice List;

f.      Provide for the Repurchase Period;

g.      Order SC to provide the Notice List within sixty (60) days of the expiration of the Repurchase Period;

h.    Direct the Settlement Administrator to mail the Notice to each individual on the Notice List by first-class mail no later than sixty (60) days after SC provides the Settlement Administrator with the Notice List;

i.    Schedule a Final Approval Hearing on final approval of this Settlement;

j.    Establish a procedure for Members of the Class to exclude themselves and set a date, approximately sixty (60) days after the Settlement Administrator sends the Class Notice, after which no Member of the Class shall be allowed to opt out of the Settlement and shall be bound to the terms of the Settlement, absent court approval;

k.    Establish a procedure for Settlement Class Members to appear and/or object to the Settlement and set a date, approximately sixty (60) days after the Settlement Administrator sends the Class Notice, after which no Settlement Class Member shall be allowed to object, absent court approval;

l.    Stay all proceedings in the Action against the Defendant, other than proceedings as may be necessary to carry out the terms and conditions of the Agreement;

m.    Contain such other and further provisions consistent with the terms and provisions of this Agreement as the Court may deem advisable; and

n.    Authorize the Parties to take all necessary and appropriate steps to establish the means necessary to implement the terms of this Agreement.

2.5.    <u>Class Notice</u>.  The Settlement Administrator shall cause the Class Notice to be mailed pursuant to the Preliminary Approval Order and the terms of this Agreement. After entry of the Preliminary Approval Order and expiration of the Repurchase Period,

SC agrees to re-run the class data to finalize the number of class members and the total number of unique loans and Deficiency Balances to be compromised in order to finalize the Notice List to which the Settlement Administrator will send Notice. The Parties agree and acknowledge that any decrease to the Class size that may result from this process is not a substantial change under this Agreement. The Parties reasonably anticipate that, in no event, will the number of Accounts exceed more than 39,920 after the class data is re-run pursuant Section 3.1 below.

2.6.    The Settlement Administrator, who shall execute and be bound by the Protective Order, shall use this Confidential Information only to effectuate the settlement of this Action.

2.7.    The Parties agree to respond within a reasonable period of time to reasonable inquiries from the Settlement Administrator.

2.8.    <u>Order of Final Approval and Judgment</u>. The Court shall enter the Order of Final Approval, which shall among other things:

a.    Find that (i) the Court has personal jurisdiction over the Settlement Class Members, (ii) the Court has jurisdiction over the claims asserted in the Action, and (iii) venue is proper;

b.    Finally approve the Settlement;

c.    Finally certify the Settlement Class for settlement purposes only;

d.    Find that the form and means of disseminating the Class Notice complied with all laws, including, but not limited to, the Due Process Clause of the United

States Constitution, and find that the Parties and procedures used complied with federal law so as to give full effect to the Settlement;

e.    Enter Final Judgment with respect to the Released Class Claims of all Settlement Class Members and dismiss the Released Class Claims with prejudice, keeping the Action open only for purposes of the implementation of the terms of this settlement, including orderly administration;

f.    Make the Releases in Section 10 of this Agreement effective as of the date of the Final Judgment;

g.    Find that, by operation of the entry of the Judgment, the Class Representatives and all of the Settlement Class Members shall be deemed to have forever released, relinquished, and discharged the SC Releasees from any and all Released Class Claims;

h.    Find that, by operation of the entry of the Judgment, SC shall be deemed to have forever released, relinquished, and discharged the Class Releasees from any and all Released SC Claims;

i.    Require SC to make an initial request for deletion of tradelines within sixty (60) days from entry of the Final Approval Order, as defined in Section 4.5;

j.    Authorize the Parties to implement the terms of this Agreement;

k.    Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment, and for any other necessary purpose; and

l. Issue related orders to effectuate the Final Approval of the Settlement and its implementation.

2.9. <u>No Injunctive Relief</u>. The Final Approval Order and Judgment shall not provide for any injunctive relief against either Party.

2.10. <u>Finality of Judgment</u>. The Final Approval Order has become Final, including expiration of the time for filing any appeal or other form of objection to the Final Approval Order, full and final resolution of any appeal or objection that may be filed, and expiration of the time for seeking review of that disposition through an appeal, *en banc* hearing, or higher level of review.

**3.** **<u>Identification of Class Members and Notice List.</u>**

3.1. Within sixty (60) days of expiration of the Repurchase Period, SC shall provide to the Settlement Administrator the Notice List, in Excel spreadsheet format containing the following information: (i) the last eight (8) digits of the Account number for each Account; (ii) the name(s) of the Class Member(s) associated with each Account; (iii) the last known mailing address for each Class Member; (iv) the Social Security Number for each Class Member; and, (v) the total amount of the Deficiency Balance Compromise for each Account, as applicable, as of the date of the Preliminary Approval Order; (vi) the deficiency balances for Class Members who will not receive a Deficiency Balance Compromise; (vii) the financed amount; and, (vii) finance charge amount for each loan. Class Counsel will be provided with a version of the Notice List that does not include Social Security Numbers. Defense Counsel shall provide with the Notice List a letter

containing a representation and warranty that the Notice List is accurate to the best of SC's knowledge, information, and belief.

3.2.    SC is providing the information set forth in Section 3.1, including the Class Members' Social Security Numbers, for legitimate business purposes and only for purposes of the Settlement of this Action.

3.3.    The Settlement Administrator shall review, verify, and, if applicable, update the Class Member mailing addresses in the spreadsheets provided by SC pursuant to Section 3.1 through the United States Postal Service Coding Accuracy Support System ("CASS") and National Change of Address ("NCOA") database and/or through the Accurint and/or Westlaw databases or another equivalent database prior to the sending of the Class Notice and as updated information is needed or obtained.

**4.    <u>Settlement Consideration.</u>**

4.1.    In consideration for the Class Releases set forth in Section 10, SC will provide the following benefits.

4.2.    <u>Repurchase of Accounts</u>.  No later than the expiration of the Repurchase Period, SC agrees to use its best efforts to attempt to repurchase or re-acquire all rights, title, and interest to Class Member(s)' subject auto loan accounts which it had previously sold, assigned, or transferred to a Collector.

4.3.    <u>Compromise of Deficiency Balances.</u>

4.3.1.    Upon the Effective Date (*i.e.*, thirty-five (35) days after Final Approval), SC agrees to compromise Deficiency Balances, where applicable, alleged to be owed by each Settlement Class Member.

4.3.2. It is the Parties' mutual intent to compromise the Deficiency Balances by way of an accord and satisfaction. While the Parties acknowledge that, to date, there has not been any judicial determination that the compromise of the Deficiency Balances constitutes an accord and satisfaction, the Parties do not have any objection to Plaintiffs requesting such a determination or for the Court to issue such a determination, for purposes of effectuating this Settlement. In the event the IRS, a court, or any other regulating or governing body deem the Parties' intended accord and satisfaction invalid, this Settlement Agreement shall nonetheless remain in full force and effect and the other benefits or payments due, or to become due, shall not be increased or changed, nor shall such a determination provide any basis for the Parties to terminate this Agreement.

4.3.3. SC represents and warrants that, as of October 25, 2022, it is not aware of any deficiency judgments or arbitration awards in its favor against any Class Member nor does it intend to initiate any such claim for a deficiency judgment or award against any Class Member. However, if it is discovered that such a deficiency judgment(s) or arbitration award(s) exist as against any Class Member(s), then such information will not result in a breach of this agreement. Rather, such information will only result in SC's obligation to reasonably work collaboratively with Class Counsel to promptly investigate the veracity of such information and, as necessary, take all reasonable steps to cooperate with Class Counsel to move the appropriate court to vacate such a deficiency judgment(s) and to expunge the docket.

4.3.4. <u>Cessation of Collection Efforts</u>. Immediately upon entry of the Preliminary Approval Date, Santander voluntarily agrees to cease all collection efforts

relating to the Deficiency Balances of Class Members, and immediately cease all efforts regarding any deficiency lawsuit(s) or arbitrations against Class Members asserting any Released SC Claims.  This provision is not governed by a court order enjoining any such collection efforts, but rather is a volitional act by SC to ensure, *inter alia*, that Class Members are not adversely affected by the lapse in time occasioned by the 120-day Repurchase Period.  If any Class Member or Class Counsel become aware of collection efforts by SC on a Deficiency Balance after Preliminary Approval and before the Effective Date, the Class Member or Class Counsel shall notify Defense Counsel in writing of the collection effort and sufficiently identify the Account at issue. SC shall have the right to cure any non-compliance within fourteen (14) days after receiving written notice and any cured collection effort will not be considered a breach of this Agreement.

    4.4.   <u>Monetary Relief.</u>

    4.4.1.   Within thirty (30) days after the Court's entry of the Preliminary Approval Order, SC will fund the Settlement Fund by depositing the sum of Fourteen Million Dollars ($14,000,000) into an escrow account (*i.e.*, via a wire or check) with the Settlement Administrator, the terms of which shall be subject to SC's approval.  The account may, though is not required to, bear interest.

    4.4.2.   The Settlement Administrator's costs associated with disseminating the Class Notice, the Settlement Website, distributing checks to Settlement Class Members, and any escrow, administrative and/or bank related fees and costs associated with the Settlement Administrator's distribution of payments shall be paid out of the Settlement Fund.

4.4.3.   After deducting Attorneys' Fees and Expenses, Settlement Administration Costs, and Incentive Payments from the Settlement Fund, the Settlement Fund shall initially be distributed equally on a per-Account basis (the "First Distribution") as set forth in Section 6.1.  If there are co-borrowers on an Account, the First Distribution shall be split equally among those Settlement Class Members that are co-borrowers on the Account, unless they file an objection to the equal division pursuant to the procedures set forth in the Class Notice or as otherwise directed by the Court.

4.4.4.   Under no circumstances shall SC's total payment obligation under the Settlement Agreement exceed Fourteen Million Dollars ($14,000,000).

4.5.    <u>Request for Deletion of Tradelines.</u>

4.5.1.  No later than sixty (60) days after the Effective Date, SC shall submit a request to the Credit Reporting Agencies for the deletion of the entire tradelines associated with any Settlement Class Members' Accounts, to the extent SC submitted any tradeline information to the Credit Reporting Agencies.  After the Effective Date, SC agrees not to request that the Credit Reporting Agencies reinstate any Class Member's tradeline that it has agreed to request be deleted pursuant to this Agreement.  If, after one hundred twenty (120) days after the Effective Date, a request is made by Class Counsel or a Settlement Class Member to re-submit a deletion request to any Credit Bureau because their tradeline has not been removed, SC agrees to re-submit a deletion request for that Settlement Class Member within thirty (30) days.  Notice for the resubmission request should be made to SC's counsel as listed in Section 20 below.  The resubmission request will include the name of the Settlement Class Member, their account number or if the

Settlement Class Member does not know their account number, other identifying information such as their Social Security Number, and a reasonable basis for the request (*e.g.*, that the Settlement Class Member looked up their credit report 120 days or more after the Effective Date and the tradeline still appears on the report). SC agrees to submit up to two (2) requests for the deletion of a Settlement Class Member's tradeline. However, Class Members acknowledge that the credit reporting agencies are separate entities from SC, and it is the Class Members' responsibility to contact the credit reporting agencies to verify that they have taken action consistent with the request of SC, and that no cause of action can or will be stated, including any for breach of this Agreement against SC, in the event any credit reporting agency fails to so amend Class Member's credit history. Upon completion of the Second Request, SC shall have no further obligations under this Section.

4.5.2.   Nothing in this Section is an admission either about SC's current or past practices, or an admission that the terms are mandated by law or another requirement.

4.5.3.   The relief set forth in this Section shall not operate as an injunction or otherwise provide any Class Member or governmental official or agency, or any other person or entity with any right or power to seek direct enforcement of its terms. Settlement Class Member may seek relief from the Court as to the breach of the terms of the Settlement Agreement if, and only if, SC fails to make the deletion request set forth in Section 4.5.1.

4.6.    <u>Tax Treatment.</u>

4.6.1.   This Agreement is enforceable regardless of its tax consequences. The Parties understand and agree that this Agreement reflects the settlement of disputed legal claims.   The Parties and the Settlement Administrator make no representations

regarding the Agreement's tax consequences. Settlement Class Members will be solely responsible for the reporting and payment of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to the Settlement. SC makes no representations as to the taxability of any portions of the benefits provided to Settlement Class Members herein.

4.6.2. SC agrees not to issue IRS Forms 1099-C to Class Members or the IRS for the Deficiency Balance Compromise. However, if the IRS, the Court, or any other regulating or governing body provides a directive to SC to issue Forms 1099-C in connection with the Deficiency Balance Compromises, SC will comply with the directive(s) of the IRS, a court, or any other regulating or government body. In such event, SC shall, within fourteen (14) days of receipt of any such directive, provide to Class Counsel a copy of any such directive(s).

4.6.3. Within fourteen (14) days of issuance of any Forms 1099-C to Class Members or the IRS by SC or its agent (whether by error or at the directive of the IRS, a court, or any other regulating or government body), SC shall provide copies of any Forms 1099-C to Class Counsel.

4.7.    Disputes Relating to Issuance of 1099-Cs.

4.7.1. To the extent that Class Counsel believes that, notwithstanding the terms of this Agreement, SC inadvertently issued a 1099-C to a Class Member(s) relating to a Deficiency Balance Compromise, Class Counsel shall provide written notice to Defense Counsel and a copy of all non-privileged documents, including any correspondence relating to the issuance of the 1099-C, together with the basis why Class

Counsel contends that the 1099-C should not have been issued.  Following such notice, SC shall notify the IRS within thirty (30) days that the 1099-C was issued in error, providing a copy of such correspondence to Class Counsel.

           4.7.2.  SC agrees to reasonably cooperate with Class Members, Class Counsel, and the Settlement Administrator to validate that the Deficiency Balance Compromises were, indeed, fully compromised by SC (which, for purposes of this Agreement, shall mean that, as of June 6, 2021, SC's business records reflect that Class Members had deficiencies on their accounts totaling $136,888,647.96, and that, as a result of the Final Approval, SC will ensure the Deficiency Balance on all Settlement Class Member Accounts reflects a $0 balance and the Settlement Class Member will not have any further obligations under the account).  If the IRS requests payment of taxes in connection with any of the benefits of the Deficiency Balance Compromises by any Class Member, SC, will not take any position as to whether any tax is (or is not) owed by the Class Member; however, SC, will not object if Class Counsel requests that the Court adjudicate such taxability.  For the avoidance of doubt, if the IRS the Court, or any other regulating or governing body requests or requires that SC issue a 1099, SC will do so, and such issuance of a 1099 shall not be deemed to be "taking a position" on whether tax is (or is not) owed by the Class Member, nor shall it be a violation of this Agreement.

           4.8.    SC shall return any Post-Approval Payments made on or after the Effective Date.

5.    **Qualified Settlement Fund.**

5.1.    The Settlement Fund shall constitute a "qualified settlement fund" ("QSF") within the meaning of Treasury Regulation § 1.46B-1 promulgated under § 468B of the Internal Revenue Code of 1986 as amended.  The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3).

5.2.    Upon or before establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation § 1.468B-2(k)(4), and shall provide SC with that employer identification number on a properly completed and signed IRS Form W-9.

5.3.    If requested by either SC or the Settlement Administrator, the Settlement Administrator and SC shall fully cooperate in filing a relation-back election under Treasury Regulation § 1.468B-1 (j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

5.4.    Following its remittances of the Settlement Fund monies as described in Section 4.4.1 of this Agreement, SC shall have no responsibility, financial obligation or liability whatsoever with respect to the notifications to the Class required hereunder, the processing of opt out letters, payments to the Settlement Class Members, payments to the Class Representatives, payment of Class Counsel's Attorneys' Fees and Expenses, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and any other taxes, penalties, interest or other charges related to taxes imposed on the QSF or its disbursements, payment of the administrative, legal,

36

accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposits shall fully discharge SC's obligation to the Class Representative, Settlement Class Members, Class Counsel and expenses of administration with respect to the disposition of the Settlement Fund.

5.5.    The Settlement Administrator shall file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, as applicable, any Form 1099-series return, any tax withholdings statements, and otherwise in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation § l.468B-2(1)(2).  Any contract, agreement or understanding with the Settlement Administrator relating to the QSF shall require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns, including, but not limited to, as applicable, any Form 1099-series return, and any tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § l.468B-2(1)(2).  The Settlement Administrator may, if necessary, secure the advice of a certified public accounting firm in connection with its duties and tax issues arising hereunder, an expense to be paid from the Settlement Fund.

**6.**     **Payments from the Settlement Fund.**

6.1.     Payments to Class Members.

6.1.1.   On a date no later than sixty (60) days after the Effective Date, and using the updated Notice List as set forth in Section 3.1, the Settlement Fund (less the Attorneys' Fees and Expenses, Settlement Administration Costs, and Incentive Payments)

shall first be distributed equally to the Settlement Class Members on a per-Account basis (the "First Distribution"). If there are co-borrowers on an Account, the First Distribution shall be split equally among those Settlement Class Members that are co-borrowers on the Account, unless they file an objection to the equal division pursuant to the procedures set forth in the Class Notice or as otherwise directed by the Court.

6.1.2.   Upon expiration of the sixty (60) day period following the date of the First Distribution, the Settlement Administrator shall void the checks of Settlement Class Members that were returned as undeliverable or remain uncashed on that date. Within fourteen (14) days thereafter, the Settlement Administrator shall make the Second Distribution to each of these Settlement Class Members whose checks were voided by mailing (re-issued) checks to an address that the Settlement Administrator reasonably believes to be valid.

6.1.3.   Upon expiration of the sixty (60) day period following the date of the Second Distribution, the Settlement Administrator shall void the checks of Settlement Class Members from the Second Distribution that were returned as undeliverable or remain uncashed on that date. Within fourteen (14) days thereafter, if there is $100,000 or more remaining in the Settlement Fund, the Settlement Administrator shall make the Third Distribution. The Third Distribution shall be made only to those Settlement Class Members that cashed a check in the First Distribution or the Second Distribution; those Settlement Class Members whose checks from the Second Distribution were voided shall be automatically rendered ineligible to share in and shall be excluded from the Third and Fourth Distribution, if they are made. If applicable, the Third Distribution shall be made

on a per-Account basis, by taking the amount remaining in the Settlement Fund divided by the number of Accounts eligible to share in the Third Distribution.  The Third Distribution payment to a particular Account shall be split equally among the Settlement Class Members that are co-borrowers on that Account that is eligible for a check in the Third Distribution, unless they file an objection to the equal division pursuant to the procedures set forth in the Class Notice or as otherwise directed by the Court.

6.1.4.   Upon expiration of the sixty (60) day period following the date of the Third Distribution, if one is made, the Settlement Administrator shall void the checks of Settlement Class Members from the Third Distribution that were returned as undeliverable or remain uncashed on that date.  Within fourteen (14) days thereafter, if there is $100,000 or more remaining in the Settlement Fund, the Settlement Administrator shall make the Fourth Distribution.  The Fourth Distribution shall be made only to those Settlement Class Members that cashed a check in the Third Distribution; those Settlement Class Members whose checks from the Third Distribution were voided shall be automatically rendered ineligible to share in and shall be excluded from the Fourth Distribution, if one is made.  If applicable, the Fourth Distribution shall be made on a per-Account basis, by taking the amount remaining in the Settlement Fund divided by the number of Accounts eligible to share in the Fourth Distribution.  The Fourth Distribution payment to a particular Account shall be split equally among the Settlement Class Members that are co-borrowers on the Account that is eligible for a check in the Fourth Distribution, unless they file an objection to the equal division pursuant to the procedures set forth in the Class Notice or as otherwise directed by the Court.

6.1.5.  After the aforesaid distributions, neither the Settlement Administrator nor SC shall have any further obligation to locate any Settlement Class Member or to make any further distribution to Settlement Class Members, absent Court order.

6.1.6.  Notwithstanding the foregoing, the Settlement Administrator may reissue settlement checks, on an individual basis, with the approval of Class Counsel.  The Settlement Administrator shall, however, maintain the priority of payments whereby: (a) replacement settlement payments for the First Distribution and Second Distribution may be reissued so long as the re-issued settlement payments, if uncashed, are voided prior to the Third Distribution; (b) replacement settlement payments for the Third Distribution and Fourth Distribution may be reissued, so long as the re-issued settlement payments, if uncashed, are voided no later than sixty days following the Fourth Distribution.  All checks shall be void sixty (60) days after the Fourth Distribution.  The Settlement Administrator shall notify counsel in writing within fourteen (14) days after the last of the aforesaid distributions of the number of Settlement Class Members who were sent checks, the number of Settlement Class members who did not cash their checks, the number of outstanding checks and respective amounts, the total dollar amount of the checks distributed by the Settlement Administrator, and an accounting of the Settlement Fund.

6.1.7.  SC represents and warrants that, as of the date of this Agreement, it owns the Account of Class Representatives Hugh and Christine Kelly.

6.2.  Upon expiration of the sixty (60) day period following the date of the Fourth Distribution, if one is made, the Settlement Administrator shall void the checks of

Settlement Class Members from the Fourth Distribution that were returned as undeliverable or remain uncashed on that date.

6.3.    <u>Incentive Awards to Class Representatives and Payments to Individuals</u>. Class Counsel shall be entitled, subject to Court approval, to apply to the Court for an incentive award to the Class Representatives in an amount not to exceed $15,000 ("Incentive Awards").  SC will take no position on Class Counsel's request for these Incentive Awards and Payments.  Within sixty (60) days of the Effective Date and upon the Class Representatives' and Individuals' submission of a Form W-9 to the Settlement Administrator, subject to Court approval, the Settlement Administrator shall remit Incentive Awards to the Class Representatives and Payments to the Individuals.

6.4.    <u>Cy Pres</u>.  Upon expiration of the sixty (60) day period following the last of the following to occur:  (1) the Second Distribution, if the Settlement Fund does not exceed $100,000 following that distribution; (2) the Third Distribution, if the Settlement Fund does not exceed $100,000 following that distribution; or (3) the Fourth Distribution, the Settlement Administrator shall void the checks of Settlement Class Members from the last distribution that were returned as undeliverable or remain uncashed on that date.  Within fourteen (14) days thereafter, a payment of the remaining balance of the Settlement Fund shall be made to the Cy Pres Recipient(s).

**7.    Retention and Duties of Settlement Administrator.**

7.1.    The Settlement Administrator shall administer the Settlement pursuant to the terms of this Agreement.  The Settlement Administrator shall be responsible for (i) administering the Class Notice (including data standardization and de-duplication of the

Notice List including updating addresses through NCOA, reasonable efforts to update addresses for undeliverable notices, and printing and mailing the Class Notice), (ii) sending the CAFA notice as required by 28 U.S.C. § 1715, (iii) creating and hosting the Settlement Website with downloadable forms (as necessary) and case information, (iv) administering a question/answer interactive component with live reception (potentially), (v) deploying and operating a toll-free contact center to field inquiries from Class Members, (vi) obtaining and furnishing documents to effectuate this Settlement, (vii) answering questions posed by Class Members, Class Counsel, and Defense Counsel, (viii) paying the Incentive Payments to the Class Representatives, and (ix) distributing payments to Settlement Class Members. The Settlement Administrator shall also be responsible for additional tasks the Parties jointly agree are necessary to accomplish administration of the Settlement.

7.2.    The Settlement Administrator shall not have any duties with respect to settlement administration apart from those expressly provided for or contemplated in this Agreement. SC shall not be responsible for any costs of the Settlement Administrator for additional services provided outside the scope of this Settlement Agreement.

7.3.    SC, Defense Counsel, and Class Counsel will coordinate with the Settlement Administrator to provide Notice to the Settlement Class, as provided in this Settlement Agreement. Because the information about Settlement Class Members that will be provided to the Settlement Administrator will consist of confidential information, non-public personal information, and other information protected by privacy laws, the Settlement Administrator will execute a non-disclosure agreement as set forth in the Protective Order (ECF 32) and will take all reasonable steps to ensure that any information

provided to it by SC will be used solely for the purpose of effecting this Settlement and otherwise shall comply with SC vendor and information security requirements. Social Security Numbers will not be shared with Class Counsel or the Class Representatives. The Settlement Administrator shall administer the Settlement in accordance with the terms of this Settlement Agreement and, without limiting the foregoing, shall treat any and all documents, communications and other information and materials received in connection with the administration of the Settlement as confidential and shall not disclose any or all such documents, communications, or other information to any person or entity except as provided for in this Settlement Agreement or by court order.

7.4.    The Settlement Administrator shall complete and provide to SC a W-9 form and any other tax-related forms that SC may request prior to SC funding Settlement.

**8.    Notice to the Class and Settlement Website.**

8.1.    Subject to the Court's approval, the form of Class Notice shall be substantially in the form of **Exhibit 1** attached hereto.

8.2.    As required in Section 3.1, SC shall provide the Notice List to the Settlement Administrator.

8.3.    If the Court provides authorization to send the Class Notice to the individuals on the Notice List and approves the Class Notice, the Settlement Administrator shall mail the Notice to the individuals on the Notice List via first class mail through the United States Postal Service, postage pre-paid, no later than the Notice Mailing Date. The Agreement and Notice shall also be posted on the Settlement Website, as outlined in this Section.

8.4.    Following the mailing of the Class Notice, the Settlement Administrator shall provide counsel with written confirmation of the mailing.

8.5.    Unless the Settlement Administrator receives a Class Notice returned from the United States Postal Service for reasons discussed below in this Paragraph, that Class Notice shall be deemed mailed and received by the individual to whom it was sent five (5) days after mailing.  In the event that subsequent to the first mailing of a Class Notice, and prior to seven (7) days before the Opt-Out Deadline, the Notice is returned to the Settlement Administrator by the United States Postal Service with a forwarding address for the recipient, the Settlement Administrator shall re-mail the notice to that address, and the Notice will be deemed mailed at that point.  The Class Notice shall be deemed received by the individual once it is mailed for the second time.  Nothing in this Paragraph shall be construed to extend the Opt-Out Deadline for any Class Member.  In the event there is a late opt-out request due to a returned Class Notice due to an address error, then the Settlement Administrator shall immediately notify Defense Counsel and Class Counsel who shall confer on the most efficient means to proceed, involving the Court if necessary.

8.6.    Within thirty (30) days of the Notice Mailing Date, the Settlement Administrator, upon the approval of the Court to file under seal pursuant to the Protective Order (to protect the names, addresses, and other personal information of Class members), will cause to be filed with the Court a list of the names and addresses of all Class Members to whom the Class Notice was sent.

8.7.    No later than the Notice Mailing Date, the Settlement Administrator shall establish the Settlement Website, which shall contain copies of this Agreement and

Exhibits including the Class Notice as well as the Complaint, the Preliminary Approval Order, applications for Attorneys' Fees and Expenses and Incentive Payments, and the Final Approval Order. The Settlement Website shall remain open and accessible until at least sixty (60) days following entry of the Final Approval Order.

9. **Representations and Warranties.**

9.1.    The Class Representatives represent and warrant that they have not assigned or otherwise transferred any interest in any of the Released Class Claims against any of the SC Releasees, and further covenant that they will not assign or otherwise transfer any interest in any of the Class Representatives' Released Class Claims.

9.2.    The Class Representatives represent and warrant that they will have no surviving claim or cause of action against any of the SC Releasees with respect to any of the Released Class Claims, following a Final Approval Order that incorporates this Agreement.

9.3.    SC represents and warrants that, if it serviced any of the Accounts for a third party which it did not own at any time, it has all rights, title, and interest in the Account as of the date of the execution of this Agreement.

9.4.    SC represents and warrants that either SC or Chrysler Capital were listed as the creditor in the Notices of Repossession sent to Class Members.

9.5.    SC represents and warrants the accuracy of the information in Section 3.1 above.

9.6.    SC represents and warrants that it will have no surviving claim or cause of action against any of the Class Releasees with respect to any of the Released SC Claims, following a Final Approval Order that incorporates this Agreement.

9.7.    These parties' representations and warranties are made in good faith and any *de minimis* violation(s) which becomes known shall not be deemed as a material breach of this Agreement.

9.8.    The Parties, and each of them on his, her, or its own behalf only, represent and warrant that they are voluntarily entering into the Settlement Agreement as a result of arm's-length negotiations and mediation among their counsel and before Eric Green, that in executing the Settlement Agreement, they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently selected counsel and Eric Green, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing the Settlement Agreement by representations, statements or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Settlement Agreement.  Each of the parties assumes the risk of mistake as to facts or law.

**10.    Releases.**

10.1.    <u>Release by Class Representatives and Class Members.</u>

10.1.1. On the Effective Date, Class Releasors, including but not limited to the Class Representatives, on their own behalf and on behalf of each Settlement Class

Member, by operation of this Release and the Judgment set forth in the Order of Final Approval, do hereby and shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of the SC Releasees of and from any and all Released Class Claims.

10.1.2. The Class Releasors acknowledge and agree that they are aware that they may hereafter discover material or immaterial facts in addition to or different from those which they now know or believe to be true (or may be true) with respect to the subject matter of this Release, that it is possible that unknown facts, losses or claims exist, and that known losses may have been underestimated in amount or severity. This was explicitly taken into account in connection with this Agreement. It is the Releasors' intention to, and they do hereby, upon the Effective Date of this Agreement, fully, finally, and forever settle and release each and every one of the SC Releasees from each and every Released Class Claim.

10.1.3. Subject to Court approval, each Settlement Class Member shall be bound by this Agreement and all of their Released Class Claims shall be dismissed with prejudice and released even if they never received actual, prior notice of the Action or its Settlement in the form of the Notice or otherwise. The Release and agreements contained in this Section 10 shall apply to and bind all Settlement Class Members, including those Settlement Class Members whose Notices are returned as undeliverable, and those for whom no current address can be found, if any.

10.2.    Release by SC.

47

10.2.1. On the Effective Date, SC, by operation of this Release and the Judgment set forth in the Order of Final Approval, hereby and shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of the Class Releasees of and from any and all Released SC Claims.

10.2.2. SC acknowledges and agrees that it is aware that it may hereafter discover material or immaterial facts in addition to or different from those which it now knows or believes to be true with respect to the subject matter of this Release, that it is possible that unknown facts, losses or claims exist, and that known losses may have been underestimated in amount or severity.  This was explicitly taken into account in connection with this Agreement.  It is SC's intention to, and it does hereby, upon the Effective Date of this Agreement, fully, finally, and forever settle and release each and every one of the Class Releasees from each and every Released SC Claims.

10.3.   On the Effective Date, Class Releasors hereby release the SC Releasees from each and every Released Class Claim, and SC hereby releases the Class Releasees from each and every Released SC Claim.

10.4.   Promptly after the Effective Date, Settlement Class Members shall dismiss with prejudice all claims, actions or proceedings that are released pursuant to this Agreement.  In the event any such actions or proceedings are not dismissed and SC learns of the action, SC may provide notice to the Settlement Class Member of this Settlement and request dismissal of the action.

10.5.    The Class Releasors, including but not limited to the Class Representatives, on their own behalf and on behalf of each Settlement Class Member, expressly acknowledge that they are familiar with and, upon entry of the Final Approval Order in this Settlement, waive and release with respect to the Released Class Claims any and all provisions, rights, and benefits conferred by any of the following:

10.5.1. Section 1542 of the Civil Code of the State of California, which states that:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.";

10.5.2. any law of any and all equivalent, similar, or comparable federal or state rules, regulations, laws, or principles of law of any other jurisdiction that may be applicable herein; and/or

10.5.3. any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in the Agreement.

## 11.    <u>Opt Out Rights.</u>

11.1.    A Class Member who wishes to be excluded from the Settlement Class must do so in writing.  To opt out, the Class Member must comply with the procedures and deadlines in this Agreement, the Class Notice, and any Court order entered in this case.

11.2.    In order to opt out, the Class Member must complete and send to the Settlement Administrator, at the mailing address or email address listed in the Class Notice and on the Settlement Website for this Settlement, a Request to opt out that is postmarked or emailed no later than the Opt-Out Deadline, as specified in the Class Notice.   The Request to opt out must: (a) identify the case name; (b) identify the name and address of the person requesting exclusion; (c) be personally signed by the person(s) requesting exclusion; and (d) contain a statement that indicates a desire to be excluded from the Settlement Class, such as "I hereby request that I be excluded from the proposed Settlement Class in the Action."  Mass Opt-Outs and Class Opt-Outs shall be void.

11.3.    Any Class Member who does not opt out of the Settlement in the manner described herein shall be deemed to be part of the Settlement Class upon the expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments.

11.4.    Any Class Member who desires to opt out must take timely affirmative written action pursuant to this Section, even if the person desiring to opt out of the Class (a) files or has filed a separate action against any of the SC Releasees, or (b) is, or becomes, a putative or actual class member in any other class action filed against any of the SC Releasees.

11.5.    Any Class Member who properly opts out of the Settlement Class shall not: (a) be bound by any orders or judgments relating to the Settlement; (b) be entitled to relief under, or be affected by, the Agreement; (c) gain any rights by virtue of the Agreement; or (d) be entitled to object to any aspect of the Settlement.

11.6.    The Settlement Administrator shall provide Class Counsel and Defense Counsel with a list of all timely Requests to Opt Out within seven (7) business days after the Opt-Out Deadline.

11.7.    Notwithstanding the foregoing, a Class Member shall have the right to revoke a properly and timely submitted request for exclusion if a notice of the Class Member's election to revoke his or her exclusion is sent to the Settlement Administrator, postmarked on or before the Opt-Out Deadline.

**12.       Objections**

12.1.    Overview.  Any Class Member may object to the Settlement.  To object, the Settlement Class Member must comply with the procedures and deadlines in this Agreement and any Court order entered in this case.

12.2.    Process.  Any Class Member who wishes to object to the Settlement must do so in writing on or before the Objection Deadline, as specified in the Class Notice and Preliminary Approval Order.   The written objection must be sent to the Settlement Administrator no later than the Objection Deadline.

12.3.    Form of Objection.  The requirements to assert a valid written objection shall be set forth in the Class Notice and on the Settlement Website, and, to be valid, the written objection must include: (a) the case name; (b) the name, address, telephone number of the Class Member objecting and, if represented by counsel, of his/her counsel; and (c) the basis for objection.

12.4.    Within seven (7) business days of the Objection Deadline, the Settlement Administrator shall provide a report to the Court setting forth a list of Objections that meet

the above guidelines, along with a copy of all Objections. The Court shall have the ultimate determination of whether an Objection has been appropriately made.

12.5.    Any Settlement Class Member who does not make his or her objection in the manner provided in this Section shall be deemed to have waived such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement as incorporated in the Agreement, and to the award of Attorneys' Fees and Expenses to Class Counsel and the payment of an Incentive Award to the Class Representative, unless otherwise ordered by the Court.

12.6.    <u>Appearance</u>. Subject to approval of the Court, any Class Member who files and serves a written objection in accordance with this Section and the Class Notice may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable.

## 13.    **Termination.**

13.1.    In the event that the Settlement set forth in this Agreement is not approved without changes by the Court or, if one of the conditions upon which the Agreement is based is not satisfied, or if the Court determines that it lacks jurisdiction to approve the Settlement, or if there is a court order from another court that takes jurisdiction over some or all of the Claims, or if there is a regulator determination that frustrates the purpose of and protection of the Settlement, or in the event that the Effective Date does not occur, no further payments shall be made by SC to anyone in accordance with the terms of this

Agreement, the Parties will bear their own costs and fees with regard to the efforts to obtain Court approval, and this Agreement shall be deemed null and void with no effect on the Action whatsoever.  In the event the Court awards Class Counsel less than requested in Attorneys' Fees and Expenses, this Settlement Agreement shall nonetheless remain in full force and effect.

13.2.    Failure of the Court to enter a Preliminary Approval Order that includes the provisions in Section 2.4.3 or to enter a Final Approval Order that includes the provisions in Section 2.8, will be grounds for SC or the Class Representatives to terminate the Settlement and the terms of this Agreement.  If any material portion of the Agreement or the Order of Final Approval is vacated, modified, or otherwise altered on appeal, SC or the Class Representatives may, in their sole discretion, within fourteen (14) calendar days of such appellate ruling, declare that the Agreement has failed to become effective, and in such circumstances the Agreement shall cease to be of any force and effect.

13.3.    In the event that 2% or more Class Members exclude themselves from the Settlement Class, SC shall have the absolute discretionary right (but not the obligation) to terminate this Settlement and Agreement and in such case, each and every one of SC's obligations under this Agreement shall cease to be of any force and effect, and this Agreement and any orders entered into in connection therewith shall be vacated, rescinded, cancelled, and annulled (except for any provision included in the Preliminary Approval Order substantially similar to Paragraph 20 of the Preliminary Approval Order attached as **Exhibit 2**).  If SC exercises this option, the Parties shall return to the status quo in the Action as if the Parties had not entered into this Agreement.  In addition, in such event, the

Agreement and all negotiations, Court orders, and proceedings relating thereto shall be without prejudice to the rights of the Parties, and each of them, and evidence relating to the Agreement and all negotiations shall not be admissible or discoverable in the Action or in any other proceeding.  SC must exercise this option pursuant to this Paragraph within ten (10) days after receiving the Opt-Out List and at least three (3) days prior to the Final Approval Hearing, by giving written notice of such exercise to Class Counsel.

13.4.   If one of the Parties exercises a right herein to terminate or rescind this Agreement or this Agreement is not approved by the Court pursuant to the proposed Order of Final Approval, this Agreement, the conditional Class certification provided herein, the Settlement proposed herein (including any modifications made with the consent of the Parties), and any action taken or to be taken in connection therewith shall be terminated and shall become null and void and have no further force or effect, the Preliminary Approval Order shall be vacated (except for any provision included in the Preliminary Approval Order substantially similar to Paragraph 20 of the Preliminary Approval Order attached as **Exhibit 2**, which provides that the Settlement shall not be construed as an admission of liability, among other things), the Parties shall be restored to their respective positions existing prior to the execution of this Agreement, and the Parties' rights and obligations with respect to the use of this Agreement and the Settlement contemplated hereby will be subject to Section 17 hereof.  In addition, neither this Agreement, the preliminary certification of the Class, the Preliminary Approval Order, nor any other document in any way relating to any of the foregoing, shall be relied on, referred to, or used by anyone in any way for any purpose in connection with any further proceedings in

this Action and/or any action, lawsuit, arbitration, or proceeding involving a Released Claim.

**14.**        **Certification of Settlement Class for Settlement Purposes.**

14.1.    After the Preliminary Approval Order and no later than seven (7) days before the Final Approval Hearing or as otherwise ordered by the Court, the Class Representatives shall move for Final Approval of the Settlement and entry of Final Judgment and shall request that the preliminary certification of the Settlement Class for Settlement purposes be made final.  Class Counsel shall provide a draft of the Motion for Final Approval at least four (4) business days before filing, and thereafter shall engage with Defense Counsel in a good faith consultation prior to filing.  Any responsive papers shall be filed and served no later than seven (7) calendar days prior to the Final Approval Hearing.

14.2.    If the Settlement is not granted final approval and a Final Approval Order is not entered that includes the provisions identified in Section 2.8, the certification of the above-described Settlement Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class for any other purposes in this or any other action can be or have been satisfied.  In such circumstances, SC reserves and shall have all rights to challenge certification of a Settlement Class or any other class for any other purpose in the Action or any other action on all available grounds as if no Settlement Class had been certified.

**15.**      **Attorneys' Fees and Litigation Costs**

15.1.    SC takes no position on Class Counsel's common fund request of attorneys' fees not to exceed $5,600,000.00 and reimbursement of expenses not to exceed $150,000.00.

15.2.    Class Counsel shall request attorneys' fees and reimbursement of expenses as part of its Motion for Final Approval.  Class Counsel agree that the amounts of such costs and fees awarded shall compensate them for all legal work in the Action up to and including the date of Final Judgment, including any appeal of the Judgment, as well as for all legal work and costs that may be incurred in the Action after the date of Final Judgment. In the event the Court awards Class Counsel less than requested in Attorneys' Fees and Expenses, this Settlement Agreement shall nonetheless remain in full force and effect and the other benefits or payments due or to become due shall not be increased or changed.

15.3.    Neither SC nor the SC Releasees shall have any responsibility for any Attorney's Fees and Expenses submitted by Class Counsel.  The grant, denial, or disallowance by the Court of, the request for Attorneys' Fees and Expenses or any appeal from any order related to the requested Attorneys' Fees and Expenses or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the Finality of Judgment approving the Agreement and the Settlement, except as provided for in Section 13.

15.4.    Within thirty (30) days after the Effective Date or entry of the order approving attorneys' fees (whichever is later), the Settlement Administrator shall make payment of the Attorneys' Fees and Expenses awarded by the Court to Class Counsel from

the Settlement Fund, pursuant to payment instructions in writing from Class Counsel.[5]  In accepting this payment, the Class Representatives and Class Counsel, on behalf of themselves and all Settlement Class Members, acknowledge that the payment and method of payment under this Agreement are in full satisfaction of any and all claims, rights, and demands that Class Counsel, the Class Representative, or the Settlement Class had, have, or may claim to have in the future for attorneys' fees, costs, expenses, or any other payment in connection with this Action or this Agreement.  SC shall have no responsibility for allocation or distribution of the award among Class Counsel.

15.5.  A Form 1099 for this payment may be filed by the Settlement Administrator.  Class Counsel shall cooperate with Settlement Administrator to provide all information necessary to process the payment including completing any requested tax forms (e.g., IRS Form W-9 and applicable tax identification numbers).  SC shall have no responsibility for, and no liability whatsoever with respect to, any tax obligations or any allocation among the Class Representatives and Class Counsel, and/or any other person who may assert some claim thereto, of any award or payment made in this Action or pursuant to this Agreement, including but not limited to any award or payment pursuant to this Section 15.  Class Counsel and the Class Representatives shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made pursuant to this Section 15.  No party shall be deemed the prevailing party for any other purposes of the Action.

---

[5] SC does not object to Attorneys' Fees to be paid, in whole or in part, in the form of a structured annuity or as deferred compensation.

16.    **Stay of Discovery and Other Proceedings.**

16.1.    To the extent the Action has not already been stayed by the Court, upon execution of this Agreement, the Parties shall discontinue all discovery activity or related proceedings in the Action.

17.    **Return/Destruction of Discovery Materials**

17.1.    The Parties agree that the terms of the Protective Order govern the dealings of the Parties with respect to materials produced in discovery in this Action and shall continue in force after the Effective Date of the Settlement.  Accordingly, within one hundred eighty (180) days of the Effective Date, the Parties and their counsel of record, and any consultants or experts retained by the Parties or their counsel of record, shall use their best efforts to locate all Confidential Information (as the term is defined in the Protective Order) produced in the Action and return such Confidential Information to counsel of record for the producing party or destroy all originals or reproductions (whether in electronic, hard copy, or other form) of the Confidential Information.

17.2.    Within one hundred eighty (180) days of the Effective Date, counsel of record shall make written certification that they have used their best efforts to search for all Confidential Information, that they have instructed the Class Representatives, Defendants, and all consultants or experts to return or destroy Confidential Information, and that, to the best of their knowledge, they have retained no originals or copies of any Confidential Information.  The Parties acknowledge that their duty to return or destroy all Confidential Information is a continuing duty and the Parties agree to return or destroy any such information found in the future.

17.3.    Notwithstanding this Section, the Parties, their counsel, experts, and consultants shall be excused from any duty to destroy their own work product.

17.4.    Notwithstanding this Section, the Parties shall be excused from any duty to return or destroy Confidential Information to the extent necessary to comply with outstanding court orders or with judicial and non-judicial subpoenas, civil investigative demands or other compulsory process.

17.5.    The Court shall retain jurisdiction to ensure compliance with the Protective Order.

**18.    <u>Media and Confidentiality</u>**

18.1.    The Parties, including their counsel, agree that the terms of this Settlement shall remain confidential and not be disclosed by any party until the Settlement Agreement is filed in connection with the Motion for Preliminary Approval.

18.2.    The Parties, including their counsel, agree that they shall not at any time publish or issue a press release including but not limited to the media or on the Internet concerning the Settlement.  The Parties further agree that they shall not make any statement, with or without attribution, in response to any media inquiries concerning the Action, SC or the Settlement.  In response to any such inquiries, the Parties shall refer the inquiring media to the papers filed on the court docket.

18.3.    Class Counsel and Class Representatives agree not to make any direct written solicitations to Class Members to make claims, opt out of the Settlement or object to the Settlement, unless approved by SC in writing.  Nothing in this Settlement Agreement is intended to restrict Class Counsel's ability to communicate with and/or advise Class

Counsel's clients, including individual Settlement Class Members or individuals on the Notice List, or otherwise restrict Class Counsel's ability to represent anyone.

18.4.    Plaintiffs shall not publicly disparage or encourage any Class Member to publicly disparage: (i) SC; (ii) the SC Releasees; (iii) any of SC's representatives; (iv) SC's conduct relating to this Agreement, the Settlement, the Action, the Accounts that are the subject of the Settlement, the Notices of Repossession, or the Deficiency Balances; or (v) SC's policies, procedures, and practices related to the repossession of motor vehicles, the issuance of Notices of Repossession, the disposition of repossessed motor vehicles or deficiency balances.  Plaintiffs and Class Counsel agree not to make any direct written solicitations to Class Members to opt out or object to the Settlement.  No Party nor their counsel shall seek any media attention relating to this Settlement, and if any request by the media is sought, will decline to comment.  If any disparaging statement is made in violation of this Paragraph, upon notice from SC, the party who made the disparaging statement shall provide SC with a written and signed statement fully retracting the Disparaging Statement within seven (7) days.

18.5.    Nothing in this Agreement is intended to, or shall be construed to, prevent or inhibit Class Counsel from providing legal advice/services to Class Counsel's clients including Plaintiffs and, after the Preliminary Approval Date, any other Class Members, nor to impair Class Counsel's rights and duties pursuant to the Rules of Professional Responsibility.

**19.**      **Right to Cure.**

19.1.   The Parties, Class Counsel, and Defense Counsel agree to reasonably cooperate to comply with the terms of this Agreement.  If any Party fails to comply with a term or conditions of this Agreement, the Party shall have the right to cure such non-compliance within fourteen (14) days after receiving written notice by the other Party.  No Party shall commence legal action or seek intervention by the Court with respect to another Party's failure to comply with the terms or conditions of this Agreement without first providing written notice and an opportunity for the other party to cure the non-compliance(s).  Thereafter, the Parties agree to reasonably cooperate with each other to cure any breach.

**20.**      **Notices**

20.1.   All notices (other than the Class Notice) required by the Agreement shall be made in writing and communicated by mail or email to the following addresses:

All notices to Class Counsel shall be sent to Class Counsel c/o:

Richard Shenkan
SHENKAN INJURY LAWYERS, LLC
6550 Lakeshore St.
West Bloomfield, MI 48323
Telephone: 412-716-5800
Facsimile: 888-769-1774
Email: rshenkan@shenkanlaw.com

All notices to Defense Counsel shall be sent to Defense Counsel c/o:

K. Issac deVyver
Benjamin J. Sitter
Katelyn M. Fox
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, Pennsylvania 15222

61

kdevyver@mcguirewoods.com
bsitter@mcguirewoods.com
kfox@mcguirewoods.com

**21.**        **Miscellaneous Provisions**

21.1.    <u>Cooperation</u>.    The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement.

21.2.    <u>No Admission</u>.    The Agreement compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.    The Parties agree that the amounts paid in Settlement and the other terms of the Agreement were negotiated in good faith by the Parties and at arm's length and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel.    Neither the Agreement nor the Settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the SC Releasees or Class Releasees, or any of them; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the SC Releasees or Class Releasees, or any of them, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.    If the Court does not grant Final Approval or if this Agreement otherwise becomes invalid, the Class Representatives and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that SC could not contest (or is

estopped from contesting) class certification and/or proceeding collectively on any grounds.  In such an instance, this Agreement shall not be deemed an admission by, or ground for estoppel against, SC that class certification and/or proceeding collectively in the Action is proper or cannot be contested on any grounds.

21.3.   Exhibits.  All of the exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

21.4.   Amendment/Modification.  The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.  The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.  Class Counsel, on behalf of the Class, are expressly authorized by the Class Representatives to take all appropriate action required or permitted to be taken by the Class pursuant to the Agreement to effect its terms, and also are expressly authorized to enter into any modifications or amendments to the Agreement on behalf of the Class which they deem appropriate.

21.5.   Entire Agreement.  The Agreement and the related documents entered at this time of this Agreement or referenced herein constitute the entire agreement among the Parties hereto concerning the Settlement of the Action.  No representations, warranties, or inducements have been made to any party concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

21.6.    <u>Authority</u>.  Each person executing the Agreement or any of its exhibits on behalf of any Party hereto hereby warrants that such person has the full authority to do so.

21.7.    <u>Counterparts</u>.  The Agreement may be executed in one or more counterparts, including by signature transmitted by facsimile or by email in PDF format.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

21.8.    <u>Successors and Assigns</u>.  The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, successors, and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third-party beneficiaries.

21.9.    <u>No Third-Party Rights or Beneficiaries</u>.  Except as expressly provided for herein, no government agency or official can claim any rights under this Agreement or Settlement, whether with respect to the conduct that is the subject of the Releases, the consideration in Section 4, or the funds (or remainder of funds) paid or used in the Settlement.  There are no third-party beneficiaries created or implied.

21.10.    <u>Jurisdiction</u>.  The Court shall retain jurisdiction with respect to implementation, enforcement, and interpretation of the terms of the Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

21.11.    <u>Governing Law</u>.  The Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the Commonwealth of Pennsylvania, and the rights and obligations of the Parties to the Agreement shall be construed and enforced in accordance with, and governed by, the

internal, substantive laws of the Commonwealth of Pennsylvania without giving effect to any state's or that Commonwealth's choice of law principles, to the extent applicable.

      21.12.  <u>Drafting</u>.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party.  No party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel.  Each party and their counsel cooperated in the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any party and the canon of contract interpretation to the contrary shall not be applied.

      21.13.  <u>Recitals</u>.  The recitals set forth above shall be and hereby are terms of this Agreement as if set forth herein.  The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

      21.14.  <u>No Collateral Attack</u>.  The Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member or any recipient of notices of the Settlement after the Final Judgment is entered.

Dated: _____November 18_, 2022

CLASS REPRESENTATIVES

_____
CHRISTINE KELLY

_____
HUGH KELLY

65

Dated: December 5, 2022

SANTANDER CONSUMER USA INC.

By: _____

Name: Jason Miller

Title: Sr. Dir. Litigation