**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HUGH KELLY and CHRISTINE KELLY, individually and on behalf of all others similarly situated,** <div align="right">Plaintiffs,</div><br><br>**v.**<br><br>**SANTANDER CONSUMER USA, INC.,** <div align="right">Defendant.</div> | **CIVIL ACTION**<br><br>**NO. 20-3698** |

**MEMORANDUM**

**Baylson, J.**                                                          **December 15, 2023**

Pending before this Court is a Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice (ECF No. 102) along with a Petition for Attorneys' Fees, Reimbursement of Expenses and Service Awards (ECF No. 110).

This case is a class action that was brought under the Pennsylvania Uniform Commercial Code, 13 Pa.C.S. §§ 9601, et. seq. (the "UCC") and the Motor Vehicle Sales Finance Act, 12 Pa.C.S. § 6251 et. seq. (the "MVSFA").[1]  Counsel for both parties recently agreed to settle after extensive discovery and other pretrial matters.  The overall settlement is in two categories.  First, a cash payment of $14 million to the class and, secondly, the cancellation of outstanding debts allegedly owed by members of the class, the consumers who took loans from the Defendant but had failed to repay the principal and/or interest on those loans.

---

[1] This Court has jurisdiction over this civil action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711-1715 because minimum diversity exists, the amount in controversy exceeds $5 million, and the number of members of the proposed class is at least 100 class members.

As examined in closer detail below, the Plaintiffs have demonstrated that the overall settlement is fair and reasonable, and that approval of the overall settlement is warranted.  This Court is also satisfied from the affidavit by an experienced mediator that the parties retained, Professor Eric D. Green, who has filed a detailed Declaration that he conducted the settlement negotiations and that the counsel were vigorously representing their respective clients, and that the settlement resulted from hard bargaining without any evidence of collusion.  This Court has no reason to doubt the accuracy of this mediator's report.

As to the Petition for Attorneys' Fees, counsel filed an initial petition (ECF No. 102), without any lodestar information, and requested a counsel fee of 40% of the settlement amount. Without ruling on that request, this Court promptly advised counsel that under Third Circuit jurisprudence, the Plaintiffs' counsel must support their request for attorneys' fees in a class action settlement with lodestar information, which was eventually supplied by Plaintiffs on November 1, 2023 (ECF No. 110).  The following day, the Third Circuit decided an important decision on class action settlements, In re Wawa, Inc. Data Security Litig., 85 F.4th 712 (3d Cir. 2023) ("Wawa"), as of November 2, 2023.

Because of Wawa's significance, this Court asked counsel to file a brief as to its relevance, if any, on the request for attorneys' fees in this case.  Counsel's response (ECF No. 117) satisfies this Court that most concerns which the Third Circuit expressed in its Wawa decision are not present in this case.

In considering the lodestar information, which was eventually submitted as noted above, and supplemented by additional information to support the hourly rates requested for the attorneys who worked on this case, filed December 11, 2023 (ECF No. 121), this Court is able to

construct a lodestar calculation, and consider that in connection with an appropriate award by applying a reasonable percentage of the cash settlement.

With respect to assessing attorney fees, this Court has determined not to add any value to the settlement amount for the forgiveness of the outstanding debts of members of the class because experience shows that it is highly unlikely that the Defendant, a larger national bank, would go to the trouble or expense of suing the thousands of individual consumers for accumulated debts. Even if litigation against debtors was successful, actual collection of these small amounts is also unlikely, and they would probably be "written off" in the normal course of business.

As explained in Wawa, this Court must use an overall standard of "reasonableness" under longstanding Third Circuit precedent in determining the award of attorneys' fees in a case of this nature.  See Wawa, 85 F.4th at 720 ("Reasonableness has always been the measurement for fees in a common fund.").  This Court notes that Plaintiffs' counsel has represented the plaintiffs and class with skill and that the case proceeded with a minimum amount of pretrial motion practice, allowing this Court to infer that discovery was conducted appropriately,  without undue conflict or unnecessary motions.

There is no evidence in the case that Plaintiffs' counsel added unnecessary hours to the amount of time spent on this case.  This Court also takes note that after this case had started, the former Chief Judge of this Court, Hon. Lawrence Stengel, became co-counsel with Plaintiffs, and has signed the petition for class approval and award of attorneys' fees, which warrants considerable weight in making the following award.

## I.   ANALYSIS OF CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), "The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."  A class action cannot be settled until the court has determined that the proposed settlement is "fair, reasonable, and adequate."  In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 282, 316 (3d Cir. 1998).  The Third Circuit applies a nine-prong test—the Girsh factors—to determine whether a proposed class action settlement is reasonable:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6)  the risk of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and,
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975) (internal citations omitted).  The Third Circuit has also suggested additional factors to consider, known as the Prudential considerations, which include:[2]

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for

---

[2] "Unlike the Girsh factors, each of which the district court must consider before approving a class settlement, the Prudential considerations are just that, prudential.  They are permissive and non-exhaustive, illustrat[ing]…[the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms."  In re Baby Products Antitrust Litig., 708 F.3d 163, 174 (3d Cir. 2013).

attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

In re Prudential, 148 F.3d at 323.

District courts "must make findings as to each of the Girsh factors, and the Prudential factors where appropriate," and "cannot substitute the parties' assurance or conclusory statements for [their] independent analysis of the settlement terms." In re Pet Food, 629 F.3d 333, 350-51 (3d Cir. 2010). In Baby Products, the Third Circuit presented an additional inquiry for a thorough analysis of settlement terms: "the degree of direct benefit provided to the class." Baby Products, 708 F.3d at 174.

For the reasons provided below, this Court finds that the Girsh factors and the relevant Prudential and Baby Products considerations weigh in favor of settlement approval.

### a. The Complexity, Expense, and Likely Duration of the Litigation

This case involves complex issues of statutory interpretation and other issues. Settlement avoids the need for the continued expenses of discovery and the risks associated with dispositive motions, trial, and potential appeal. This factor strongly supports settlement.

### b. The Reaction of the Class to the Settlement

The Opt-Out Deadline and Objection Deadline was September 22, 2023. Class Members were given 60 days from the Short Form Class Notice mailing date to object or opt out, which is sufficient opportunity. No class members have filed objections, and only four class members have opted out. This factor strongly supports settlement.

### c. The Stage of the Proceedings and the Amount of Discovery Completed

With respect to this factor, the Third Circuit explained in Prudential:

The parties must have an adequate appreciation of the merits of the case before negotiating. To ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amount of discovery the parties have undertaken.

In re Prudential, 148 F.3d at 319 (internal quotations omitted).  This case was litigated for over one year before Plaintiffs and Defendant opened settlement discussions with the help of an experienced mediator on a class-wide basis.  With respect to discovery, Plaintiffs served written discovery in May 2021.  In total, more than 6,500 pages were produced over the course of discovery. Plaintiffs also engaged in third-party discovery and deposed Defendant's Senior Director of Collections and Recovery Operations on September 14, 2021. The parties filed their Joint Motion to Stay the case to discuss settlement approximately two weeks after the deposition. This factor also weighs in favor of approving the settlement agreement.

### d.  The Risks of Establishing Liability and Damages

These two Girsh factors are closely related and will be addressed together.  As Plaintiffs note, Defendant vigorously disputes Plaintiffs' claims, and there is no guarantee that Plaintiffs will be able to establish liability.  Further, Plaintiffs will face challenges in establishing damages since they seek equitable remedies, including the requests for deletion of credit tradelines, which have not been subject to appellate review in Pennsylvania or the Third Circuit. The settlement provides for these remedies. These two factors weigh in favor of approving the settlement.

### e.  The Risks of Maintaining the Class Action Through Trial

The Third Circuit has noted that "[in] a settlement class, this factor becomes essentially 'toothless' because a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there should be no trial."  In re NFL Players Concussion Injury Litig., 821 F.3d 410, 440 (3d Cir. 2016) (internal quotations omitted).

Since the settlement avoids the risk of maintaining a certified class throughout trial, this factor weighs in favor of settlement.

**f.   The Ability of the Defendants to Withstand a Great Judgment**

This factor is neutral.  Other courts within the Third Circuit "regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts."  In re Flonase Antitrust Litig., 291 F.R.D. 93, 104 (E.D.Pa. 2013) (internal citations omitted). This factor neither weighs in favor nor against settlement.

**g.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The eighth and ninth Girsh factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." In re NFL, 821 F.3d at 440.  The proposed settlement here—including $14 cash settlement payment and the full compromise of $269,204,457.05 in deficiency balances—is reasonable in light of the circumstances of the litigation and the risks of proceeding to trial.  This factor weighs in favor of approving the settlement.

**h.   Prudential Factors**

The relevant Prudential factors largely weigh in favor of approving the settlement.  The Court agrees with Plaintiffs that the pleadings, settlement negotiations, and class certification motion have developed the underlying substantive issues such that the parties may assess the merits of the claims and defenses.  Members of the Class have had a sufficient opportunity to opt out of the settlement.  The procedures for processing the claims under the settlement are fair and reasonable.  Attorneys' fees are discussed in Section II below.

**i. Baby Products Inquiry**

There is a strong degree of direct benefit to the class in the form of cash payment, fully compromised deficiency balances, and requested deletion of credit tradelines.  This factor also weighs in favor of approving the settlement.

Overall, the <u>Girsh</u> factors and <u>Prudential</u> and <u>Baby Products</u> considerations weigh strongly in favor of class settlement approval.  For these reasons, this Court finds the settlement to be fair, reasonable, and adequate.  This Court next considers the attorney fee award.

## II.    ANALYSIS OF ATTORNEY AWARD

A district court should consider ten factors when analyzing a fee award in the class action settlement context:

(1) The size of the fund created and the number of persons benefitted;
(2) The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
(3) The skill and efficiency of the attorneys involved;
(4) The complexity and duration of the litigation;
(5) The risk of nonpayment;
(6) The amount of time devoted to the case by plaintiffs' counsel;
(7) The awards in similar cases.
(8) The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;
(9) The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained;
(10)       Any "innovative" terms of the settlement.

<u>In re AT&T Corp.</u>, 455 F.3d 160, 166 (3d Cir. 2006) ("In reviewing an attorneys' fees award in a class action settlement, a district court should consider the <u>Gunter</u> factors [factors 1-7 above]"[3] and "the <u>Prudential</u> factors [factors 7-10 above]").  A district court should also consider "any other factors that are useful and relevant with respect to the particular facts of the case."  <u>Id.</u>

---

[3] <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190 (3d Cir. 2000).

These factors "need not be applied in a formulaic way…and in certain cases, one factor may outweigh the rest." Id.

This Court notes that each of the Gunter and Prudential factors above generally support a substantial attorneys' fee award in this case. As explained by Plaintiffs in their Petition for Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 110):

(1) The settlement principally provides a $14 million cash payment and includes a compromise of $269,204,457.05 in deficiency balances for a class consisting of 48,108 Settlement Class Members;

(2) The Long Form Class Notice stated that Class Counsel would apply for an attorney award fee, and there have been no objections to the settlement;

(3) As Class Counsel notes, the "single clearest factor reflecting the quality of Class Counsels' services to the Class are the results obtained." ECF No. 110-1 at 15 (citing In re Flonase Antitrust Litig., 291 F.R.D. 93, 104 (E.D.Pa. 2013)). The skill and efficiency of Class Counsel has been amply demonstrated through the settlement agreement reached here;

(4) This was a complex litigation, and included, as Class Counsel notes, difficult issues of statutory interpretation pertaining to the interaction of the Pennsylvania UCC and the MVSFA, as well as issues involving the compromise of the Deficiency Balances;

(5) Since Class Counsel undertook this action on a contingent fee basis, there was a substantial risk of nonpayment. Class Counsel represents that they have expended over a thousand hours and over $30,000 in costs without any compensation thus far;

(6) [See below]

(7) Awards in other class actions are generally within the same range[4];

(8) [Not applicable to this action]

(9) Plaintiffs represents that the "fee agreement between counsel and each of the Representative Plaintiffs provides for a fee equal to 40% of the total benefit conferred upon the class."[5]

---

[4] See Gaskill v. Gordon, 160 F.3d 361 (7th Cir. 1998) (awarding attorney fees of 38% of the common fund); Taubenfeld v. Aon Corp., 415 F.3d 597 (7th Cir. 2005) (approving attorney fees of 30% of 7.25 million settlement).

[5] ECF No. 110-1 at 27, Declaration of Richard Shenkan at 19.

(10)      The settlement does not involve particularly innovative terms.  This factor is neutral, weighing neither in favor nor against the requested attorney fees.

The above factors weigh in favor of granting the attorney fee request.  However, this Court's analysis does not end with the <u>Gunter</u> and <u>Prudential</u> factors.  Where courts apply the percentage-of-recovery approach, the Third Circuit has held that it is "sensible" for district courts to also "cross-check" the percentage fee award against the lodestar calculation method.  <u>In re Rite Aid</u>, 396 F.3d at 305 (citing <u>Prudential</u>, 148 F.3d at 333).  The lodestar calculation involves "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys."  <u>Id.</u>  The multiplier—representing an "increase or decrease in the lodestar amount" —is a device that "attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work."  <u>Id.</u> at 306.  "In performing the lodestar cross-check, the district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter" and "may rely on summaries submitted by the attorneys and need not review actual billing records."  <u>Id.</u> at 306-07.

This Court finds no issue with the lodestar calculations offered by Plaintiffs, who applied the billing rates provided by the Community Legal Services (CLS) of Philadelphia attorney fee schedule to calculate the lodestar for each of the attorneys who worked on the case. Plaintiffs then used a blended rate method, which has been approved by the Third Circuit, to determine the total lodestar of $1,908,393.  This Court finds this lodestar calculation method both reasonable and consistent with Third Circuit precedent.

This Court's lodestar cross check table is provided below:

| Attorney | Role | # of Hours | Hourly Rate Requested | Lodestar |
|---|---|---|---|---|
| Richard Shenken | Attorney (Shenkan Injury Lawyers) | 923.3 | $800 | $738,640 |
| Honorable Lawrence F. Stengel (Ret.) | Attorney (Saxton & Stump) | 14.6 | $800 | $11,680 |
| Jenna Townsend | Attorney (Shenkan Injury Lawyers) | 389.7 | $495 | $192,901.50 |
| Christopher Hogg | Attorney (Shenkan Injury Lawyers) | 1,355.8 | $565 | $766,027.00 |
| Lauri Smith | Para-professional | 205 | $240 | $49,200 |
| Andrea Gadd | Para-professional (Saxton & Stump) | 12.8 | $220 | $2,816 |
| Luke Pietrek | Para-professional | 315.3 | $240 | $75,672 |

**Total lodestar to date:** $1,908,393[6]

Plaintiffs request an attorney fee in the amount of $5.6 million, seeking a multiplier of three (3) times the total lodestar crosscheck, which equates 40% of the $14 cash settlement, "for the risk of loss and the excellent results effectuated." See ECF No. 110-1 at 48, Declaration of Richard Shenkan at 3. This Court agrees with Plaintiffs that the risk of loss and results effectuated from this case warrant additional compensation beyond the lodestar crosscheck. However, this Court must be cognizant that every dollar that goes to Class Counsel is a dollar

---

[6] This lodestar figure was determined by adding the blended rate for attorneys, which is $665.00 per hour, resulting in an aggregate attorney lodestar of $1,784,461.00 and the blended rate for paraprofessional/paralegal staff of $233 per hour, resulting in an aggregate lodestar of $123,932.00. See ECF No. 110-1 at 48, Declaration of Richard Shenkan at 3. The Third Circuit has suggested using a blended rate for lodestar cross-check, which entails a "much less detailed breakdown" than would otherwise be required for a full lodestar analysis. In re Rite Aid Corp., 396 F.3d at 306-307, n.16.

less to class members.  In assessing attorney fees, the district court "must protect the class's interest by acting as a fiduciary for the class."  In re Rite Aid, 396 F.3d at 307; see also Report of the Third Circuit Task Force, Court Awarded Attorneys Fees, 108 F.R.D. 237, 251 (1985) (The court "must monitor the disbursement of the fund and act as a fiduciary for those who are supposed to benefit from it, since typically no one else is available to perform that function.").

The amount of a fee award is "within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." Pub. Interest Research Grp. of N.J., Inc. v. Windall, 51F.3d 1179, 1184 (3d Cir. 1995) (internal quotations omitted).  In consideration of the above-listed factors, this Court awards Class Counsel attorney fees in the amount of $ 4.2 million, representing 30% of the $14 million cash settlement and more than double the lodestar, which is reasonable in this Court's view.  See, e.g., In re Veritas Software Corp. Securities Litig., 396 Fed. Appx. 815, 817-18 (3d Cir. 2010) (NPO) (approving fee award equal to 30% of $21.5 million settlement where lodestar multiplier was 1.52)[7]; Taubenfeld v. Aon Corp., 415 F.3d 597 (7th Cir. 2005) (approving fee award equal to 30% of $7.25 million settlement).

III.    **COSTS**

Class counsel requests reimbursement of $33,076.55 for expenses, which includes mediation costs, court costs, discovery-related costs, travel expenses, and payments to Class-Settlement.com for a Spanish translation of the Notice to class members.  This Court finds that

---

[7] The Third Circuit in In re Veritas noted, "[w]hile the 30% fee is admittedly large, the District Court took into account that class counsel spent four years, and thousands of hours of attorneys' labor, litigating this case.  The final lodestar multiplier of 1.52 was well within the range of attorneys' fees awarded and approved by this Court."  Id.; see also In re Prudential, 148 F.3d at 341 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

these expenses are reasonable and will award counsel a reimbursement of these expenses from the settlement fund.

## IV.      INCENTIVE AWARDS FOR CLASS REPRESENTATIVES

Plaintiffs request that this Court award each of the two representative Plaintiffs incentive awards in the amount of $15,000.  While an incentive award is warranted in this case, this Court finds that the requested reward is too high.  This Court will award $10,000 to each of the Class Representatives.

## V.      CONCLUSION

For the foregoing reasons, this Court will approve the class action settlement and will award Class Counsel $4.2 million in attorney fees, $33,076.55 for expenses and $10,000 for each of the Class Representatives.  An appropriate order follows.

O:\CIVIL 20\20-3698 Kelly v Santander\20cv3698 memorandum re final approval.docx